**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| U.S. Tobacco Cooperative Inc., *et al.*[1] | ) | Case No. 21-01511-5-JNC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 2014 TO RETAIN CLIFTONLARSONALLEN LLP**

The above-captioned debtors and debtors in possession (the "Debtors"), pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby apply to retain CliftonLarsonAllen LLP ("CLA") as their financial and tax accountants in the above-captioned chapter 11 cases effective as of August 6, 2021 pursuant to the Engagement Agreements attached as ***Group Exhibit A***. The Debtors submit this Application in reliance upon the Declaration of Jeffrey Hardin, attached hereto as ***Exhibit B*** (the "Hardin Declaration") and incorporated by reference herein.

In support of this Application, the Debtors respectfully state as follows:

**JURISDICTION AND VENUE**

1.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

---

[1] The Debtors in these Chapter 11 Cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): U.S. Tobacco Cooperative Inc. (4598); U.S. Flue-Cured Tobacco Growers, Inc. (9823); Premier Manufacturing, Inc. (3251); Franchise Wholesale Co., L.L.C. (7518); Big South Distribution, LLC (4164); and King Maker Marketing, Inc. (4533). The Debtors' corporate headquarters are located at 1304 Annapolis Drive, Raleigh, NC 27608.

2.     The statutory predicates for the relief requested herein are sections 327 and 330 of the Bankruptcy Code, and Bankruptcy Rule 2014.

## BACKGROUND

3.     On July 7, 2021 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Cases").  The Debtors remain in possession of their property and continue in the operation and management of their business as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4.     The Debtors are a cooperative owned by over 500 different tobacco grower-members located in the Southeastern region of the United States.  The Debtors purchase leaf tobacco from their grower-members and process, distribute and sell tobacco products to both domestic and international markets.

5.     Additional information about the Debtors' business, capital structure and the events leading up to the Petition Date are set forth in the *Declaration of Keith H. Merrick in Support of Debtors' Chapter 11 Petitions and First-Day Pleadings* [Dkt. No. 46] (the "Merrick Declaration"),[2] which is incorporated herein by reference.

## RELIEF REQUESTED

6.     Pursuant to section 327(a) and 328(a) of the Bankruptcy Code, the Debtors seek to employ and retain CLA as their accountants in connection with the Chapter 11 Cases, effective as of August 6, 2021.

7.     It is critical that the Debtors' retention of CLA is approved.  The professionals at CLA have served as the Debtors' accountants since 2015.  Prior to the Petition Date, CLA and the

---

[2] Capitalized terms used but not defined herein shall have the meanings provided to them in the Merrick Declaration.

Debtors entered into the Engagement Agreements, pursuant to which the Debtors agreed to retain CLA to provide tax and audit services for fiscal year 2021.  CLA has already completed a substantial portion of the audit of the Debtors' consolidated financial statements.  If the Debtors were forced to hire a different accounting firm, they would incur significant fees relating to onboarding the new accounting firm and bringing the new firm up to speed on the Debtors' businesses, tax environment and history, operations and finances.  In addition, the time spent interviewing and onboarding a new accounting firm would jeopardize the Debtors' ability to meet upcoming tax and other deadlines.

8.      In sum, CLA is well acquainted with the Debtors' background, finances and operations and is uniquely suited to provide the necessary accounting services in an efficient and cost-effective manner.

## SCOPE OF SERVICES

9.      Prior to the Petition Date, the Debtors retained CLA to provide audit and tax services (the "Services") described fully in the Engagement Agreements.  The Debtors seek to retain CLA to provide the Services, which include, but are not limited to, the following:

   a. ***Audit of Consolidated Financial Reports.***  Audit of the consolidated financial statements of the Debtors, comprising the consolidated balance sheet as of April 30, 2020 and 2021, and the consolidated statements of operations, comprehensive income, members' equity and cash flows for the years ended April 30, 2020 and 2021 (the "2021 Financial Audit").  CLA began the 2021 Financial Audit pre-petition and received approximately $100,551.06 in fees and expenses relating to those services.

   b. ***401(k) Plan Audits.***  Audit of the financial statements of the 401k Plan as of and for the year ended December 31, 2020 (the "401(k) Audit").  As of the Petition Date, CLA had performed administrative functions associated with the setup of the 401(k) Audit and received $950 in fees, plus a 5% Support Fee (as defined below) relating to those services.

   c. ***Pension Plan Audit.***  Audit of the financial statements of the Pension Plan as of and for the year ended April 30, 2021 (the "Pension Audit").  As of the Petition

3

Date, CLA had performed administrative functions associated with the setup of the Pension Plan Audit and received $785 in fees, plus a 5% Support Fee (as defined below) relating to those services.

d. ***Tax Return Services.*** Prepare the Debtors' applicable federal and state income tax returns, consult on particular tax issues that may arise in the course of the Debtors' operations, provide quarterly federal tax payment estimates, file for appropriate extensions (due on August 15, 2021), (the "<u>Tax Return Services</u>"). As of the Petition Date, CLA had not begun work or received payment for the Tax Return Services.

e. ***State Tax Consulting.*** Respond to tax notices issued to the Debtors by various state taxing authorities (the "<u>State Tax Consulting</u>").

f. And all other audit, tax and accounting services requested by the Debtors during these Chapter 11 Cases.

## **PROFESSIONAL COMPENSATION**

10. Subject to the Court's approval, and customary with its standard pre-petition fee arrangement with the Debtors, CLA has agreed to charge a fixed fee with respect to the following Services: 401(k) Audit – $9,175.00 (less the $950 in fees received by CLA prepetition); Pension Plan Audit – $9,175.00 (less the $785 in fees received by CLA prepetition); Tax Return Services – $59,800.00 (the "<u>Fixed Fees</u>"). The Fixed Fees are consistent with the cost of such services charged by CLA prior to the commencement of the Chapter 11 Cases, as shown in the cost estimate provided to the Debtors prepetition,[3] and the Debtors believe they are fair and reasonable.

11. With respect to all other Services provided by CLA, the Debtors have agreed to compensate CLA on an hourly basis. CLA's standard hourly rates for the professionals providing Services to the Debtors are as follows:

| Professional | | Standard Hourly Rate |
|---|---|---|
| Ed Grossman, CPA | Principal | $400 |
| Jeff Hardin, CPA | Principal | $360 |
| Rebecca Thoune, CPA | Tax Director | $340 |
| Cathy Vicary, CPA | Director | $240 |

---

[3] *See* Grp. Ex. A.

| Professional | | Standard Hourly Rate |
|---|---|---|
| Cassandra Kurek, CPA | Manager | $235 |
| Other Senior Assurance Personnel | | $220-240 |
| Staff Assurance Personnel | | $155-165 |

12.     Pursuant to the Engagement Agreements, the Debtors have agreed to reimburse all of CLA's reasonable and necessary expenses.  CLA will maintain detailed records of actual and necessary costs and expenses incurred in connection with the Services.  In addition, pursuant to the Engagement Agreement, the Debtors have agreed to pay CLA a Technology and Support Fee (the "Support Fee") equal to five percent (5%) of CLA's fees for the Services, which CLA regularly charges its non-bankruptcy clients in the ordinary course of its business.  The Support Fee is related to the data-security costs incurred by CLA to protect the Debtors' information and is a customary fee charged to CLA's non-bankruptcy clients.

13.     As part of its ordinary billing practices, CLA does not maintain contemporaneous time records in one-tenth of an hour (0.1) increments, but when required by a particular client, bills its Services in one-quarter of an hour (0.25) increments.  Accordingly, with respect to Services for which CLA has agreed to bill on an hourly basis, the Debtors respectfully request that CLA be permitted to bill in one-quarter of an hour (0.25) increments.  CLA shall seek interim allowance and payment of such compensation pursuant to further application therefor, as well as any interim compensation procedures entered by this Court.

14.     With respect to Services for which the Debtors have agreed to pay CLA a Fixed Fee, the Debtors respectfully request that the Court authorize the Debtors to pay the full amount of the Fixed Fee upon conclusion of such Services, and further, exempt CLA from submitting contemporaneous time records with respect to such Services.

15.     CLA understands that, pursuant to § 330 of the Bankruptcy Code and Bankruptcy Rule 2016, payment of compensation, including the Fixed Fees, and reimbursement of expenses are subject to this Court's approval upon final application therefor.

## QUALIFICATIONS

16.     Founded in Peoria, Illinois in 1960, CLA has grown to employ more than 6,100 professionals in 120 U.S. locations. CLA provides integrated wealth advisory, outsourcing, audit, consulting, and tax services to clients that span a broad industry spectrum, including wholesalers and agribusiness.

17.     If this Application is approved, Mr. Hardin will lead the team that will provide the Services to the Debtors in these Chapter 11 Cases. Mr. Hardin is a principal in CLA's Orlando office specializing in providing assurance and consulting services. Mr. Hardin is a certified public accountant with over 19 years of public accounting experience providing audit and other assurance work, with a concentration on agribusiness clients.  He is a member of the Florida Institute of Certified Public Accountants and the National Institute of Certified Public Accountants.

## CLA'S DISINTERESTEDNESS

18.     As noted above, prior to the Petition Date, CLA served as the Debtors' primary audit and tax accountants.  As of the Petition Date, CLA held an unsecured, prepetition claim against the Debtors in the approximate amount of $14,749.00, which CLA has agreed to waive as set forth in the Hardin Declaration.  To the best of CLA's knowledge, CLA has no other connection with, or any interest adverse to, the Debtors, their creditors or other parties in interest, or their respective attorneys and accountants, except as set forth in the Hardin Declaration. CLA has informed the Debtors that it will conduct an ongoing review of its files to ensure that no conflicts

or other disqualifying circumstances exist or arise.  If any new material facts or relationships are discovered or arise, CLA will supplement its disclosure to the Court.

19.     Based on the Hardin Declaration, the Debtors submit that CLA is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code.

## NOTICE

20.     The Debtors have provided notice of this Application either by electronic mail, facsimile, overnight delivery or United States First Class mail to: (i) the Office of the Bankruptcy Administrator for the Eastern District of North Carolina; (ii) counsel for the Administrative Agent; and (iii) all creditors and parties-in-interest who have appeared through counsel or otherwise filed a request for notice in these Chapter 11 Cases. Due to the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors request that the Court enter an order granting the relief requested by this Application, and granting any additional relief as is just and proper.

Respectfully submitted,

Dated: August 6, 2021                    **HENDREN, REDWINE & MALONE, PLLC**

/s/ Rebecca F. Redwine
Jason L. Hendren (NC State Bar No. 26869)
Rebecca F. Redwine (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612
Telephone: (919) 420-7867
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com
        bwaller@hendrenmalone.com

and

**COZEN O'CONNOR**

Mark E. Felger
Simon E. Fraser
1201 N. Market St., Ste. 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013
E-mail:  mfelger@cozen.com
sfraser@cozen.com

David R. Doyle
Christina M. Sanfelippo
123 N. Wacker Drive, Ste. 1800
Chicago, IL 60606
Telephone: (312) 474-1648
Facsimile: (312) 382-8910
Email: daviddoyle@cozen.com
csanfelippo@cozen.com

*Counsel for the Debtors and Debtors in Possession*

EXHIBIT A



**CliftonLarsonAllen LLP**
4601 Six Forks Road, Suite 350
Raleigh, NC 27609

**phone** 919-781-3581  **fax** 919-881-0611
**CLAconnect.com**

June 18, 2021

Retirement Plan Committee and Management
U.S. Tobacco Cooperative 401(k) Plan
1304 Annapolis Dr.
Raleigh, North Carolina 27608

Dear Retirement Plan Committee and Management:

We are pleased to confirm our understanding of the terms and objectives of our engagement and the nature and limitations of the audit and nonaudit services CliftonLarsonAllen LLP ("CLA," "we," "us," and "our") will provide for U.S. Tobacco Cooperative, Inc. ("you," "your," or "the plan sponsor") for U.S. Tobacco Cooperative 401(k) Plan (the plan) for the year ended December 31, 2020, in connection with the plan's annual reporting obligation under the Employee Retirement Income Security Act of 1974 (ERISA).

Michele Reagan is responsible for the performance of the audit engagement.

**Audit services**

Except as described below, we will audit the financial statements of U.S. Tobacco Cooperative 401(k) Plan, which comprise the statement of net assets available for benefits as of December 31, 2020, and the related statement of changes in net assets available for benefits for the year then ended, and the related notes to the financial statements.

We will also evaluate and report on the form and content of the supplemental schedule(s) accompanying the financial statements. The financial statements and supplemental schedule(s) are required by the Department of Labor's (DOL) Rules and Regulations for Reporting and Disclosure under ERISA to be filed with federal Form 5500.

**Nonaudit services**

We will also provide the following nonaudit services:

- Preparation of a trial balance.

- Preparation of your financial statements and related notes.

- Preparation of adjusting journal entries.

**Audit objective**

Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America (U.S. GAAS) except that, as permitted by Regulation 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA and as instructed by you, we will not perform any auditing procedures with respect to information prepared and certified by Fidelity Management Trust Company, the trustee, in accordance with DOL Regulation 2520.103-5, other than comparing the information with the related information included in



CLA is an independent member of Nexia International, a leading, global network of independent accounting and consulting firms. See nexia.com/member-firm-disclaimer for details.

the financial statements and supplemental schedule(s). Because of the significance of the information that we will not audit, we will not express an opinion on the financial statements and supplemental schedule(s) taken as a whole. The form and content of the information included in the financial statements and supplemental schedule(s), other than that derived from the information certified by the trustee, will be audited by us in accordance with auditing standards generally accepted in the United States of America, and will be subjected to tests of your accounting records and other procedures we consider necessary to enable us to express an opinion that they are presented in compliance with the DOL's Rules and Regulations for Reporting and Disclosure under ERISA.

We will issue a written report upon completion of our audit of your financial statements. We cannot provide assurance that an unmodified opinion will be expressed on the form and content of the information included in the financial statements and supplemental schedule(s), other than that derived from the information certified by the trustee. Circumstances may arise in which it is necessary for us to modify our opinion, add an emphasis-of-matter or other-matter paragraph(s), or withdraw from the engagement. If our opinion is other than unmodified, we will discuss the reasons with you in advance. If circumstances occur related to the condition of your records, the availability of sufficient, appropriate audit evidence, or the existence of a significant risk of material misstatement of the financial statements caused by error, fraudulent financial reporting, or misappropriation of assets, which in our professional judgment prevent us from completing the audit or forming an opinion on the financial statements and supplemental schedule(s), other than that derived from the information certified by the trustee, we retain the right to take any course of action permitted by professional standards, including declining to express an opinion or issue a report, or withdrawing from the engagement.

**Auditor responsibilities, procedures, and limitations**

Except as described above, we will conduct our audit in accordance with U.S. GAAS. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error. An audit involves performing procedures to obtain sufficient appropriate audit evidence about the amounts and disclosures in the financial statements, except that assets and related transactions certified by the trustee will not be tested. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

There is an unavoidable risk, because of the inherent limitations of an audit, together with the inherent limitations of internal control, that some material misstatements may not be detected, even though the audit is properly planned and performed in accordance with U.S. GAAS, except as previously noted. Because we will not perform a detailed examination of all transactions, material misstatements, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations, including prohibited transactions with parties in interest or other violations of ERISA rules and regulations, that are attributable to the plan or to acts by management or employees acting on behalf of the plan, may not be detected.

In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management and those charged with governance of any material errors, fraudulent financial reporting, or misappropriation of assets that come to our attention. We will also inform the appropriate level of

DocuSign Envelope ID: 2BF12ZG2-5978-4B0E-8C7A-73D09485A09E

June 18, 2021
U.S. Tobacco Cooperative 401(k) Plan
Page 3

management and those charged with governance of any violations of laws or governmental regulations that come
to our attention, unless clearly inconsequential, and will include prohibited transactions in the supplemental
schedule of nonexempt transactions as required by the instructions to federal Form 5500.

Except as previously noted, in making our risk assessments, we consider internal control relevant to the plan's
preparation and fair presentation of the financial statements in order to design audit procedures that are
appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the
plan's internal control. An audit is not designed to provide assurance on internal control or to identify deficiencies
in internal control. However, we will communicate to you in writing significant deficiencies or material weaknesses
in internal control relevant to the audit of the financial statements that we identify during the audit.

In addition, we will perform certain procedures directed at considering the plan's compliance with applicable
Internal Revenue Service (IRS) requirements for tax exempt status and ERISA plan qualification requirements.
However, our audit is not specifically designed for and should not be relied upon to disclose matters affecting plan
qualifications or compliance with the ERISA and IRS requirements. If during the audit we become aware of any
instances of any such matters or ways in which management practices can be improved, we will communicate
them to you.

Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods
for which we are not engaged as auditors.

**Management responsibilities**

Our audit will be conducted on the basis that you (management and, when appropriate, those charged with
governance) acknowledge and understand that you have certain responsibilities that are fundamental to the
conduct of an audit.

You are responsible for the preparation and fair presentation of the financial statements in accordance with
accounting principles generally accepted in the United States of America (U.S. GAAP), including the information
certified by the trustee. Management's responsibilities include the selection and application of accounting
principles; recording and reflecting all transactions in the financial statements; for establishing an accounting and
financial reporting process for determining fair value measurements; determining the reasonableness of
significant accounting estimates included in the financial statements; adjusting the financial statements to correct
material misstatements; and confirming to us in the management representation letter that the effects of any
uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period
presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design, implementation, and maintenance of internal control relevant to the
preparation and fair presentation of financial statements that are free from material misstatement, whether due
to fraud or error. You are responsible for the design, implementation, and maintenance of internal controls to
prevent and detect fraud; assessing the risk that the financial statements may be materially misstated as a result
of fraud; and for informing us about all known or suspected fraud affecting the plan involving (1) plan
management, (2) employees who have significant roles in internal control, and (3) others where the fraud could
have a material effect on the financial statements. Your responsibilities include informing us of your knowledge
of any allegations of fraud or suspected fraud affecting the plan received in communications from employees,
former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the

DocuSign Envelope ID: 2BE12ZG2-5978-4B0E-8C7A-73D08485A99E

June 18, 2021
U.S. Tobacco Cooperative 401(k) Plan
Page 4

plan complies with applicable laws and regulations, and informing us of all instances of identified or suspected noncompliance whose effects on the financial statements should be considered.

You are responsible for providing us with (1) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, and for the accuracy and completeness of that information, including the accuracy and completeness of the information certified by the trustee; (2) additional information that we may request for the purpose of the audit; and (3) unrestricted access to persons within the plan from whom we determine it necessary to obtain audit evidence. You agree to inform us of events occurring or facts discovered subsequent to the date of the financial statements that may affect the financial statements.

Management is responsible for the preparation of the supplementary information in accordance with U.S. GAAP and the DOL's Rules and Regulations for Reporting and Disclosure under ERISA. You agree to include our report on the supplementary information in any document that contains, and indicates that we have reported on, the supplementary information. You also agree to include the audited financial statements with any presentation of the supplementary information that includes our report thereon or make the audited financial statements readily available to users of the supplementary information no later than the date the supplementary information is issued with our report thereon. You agree to provide us written representations related to the presentation of the supplementary information.

Management is responsible for providing us with a written confirmation concerning representations made by you and your staff to us in connection with the audit. During our engagement, we will request information and explanations from you regarding, among other matters, the plan's operations, internal control, future plans, specific transactions, and accounting systems and procedures. The procedures we will perform during our engagement and the conclusions we reach as a basis for our report will be heavily influenced by the representations that we receive in the representation letter and otherwise from you. Accordingly, inaccurate, incomplete, or false representations could cause us to expend unnecessary effort or could cause a material fraud or error to go undetected by our procedures. In view of the foregoing, you agree that we shall not be responsible for any misstatements in the plan's financial statements that we may fail to detect as a result of misrepresentations made to us by you.

**Responsibilities and limitations related to nonaudit services**

For all nonaudit services we may provide to you, management agrees to assume all management responsibilities; oversee the services by designating an individual, preferably within senior management, who possesses suitable skill, knowledge, and/or experience to understand and oversee the services; evaluate the adequacy and results of the services; and accept responsibility for the results of the services. Management is also responsible for ensuring that your data and records are complete and that you have received sufficient information to oversee the services.

The responsibilities and limitations related to the nonaudit services performed as part of this engagement are as follows:

- We will prepare a trial balance for use during the audit. Our preparation of the trial balance is limited to formatting information into a working trial balance based on management's chart of accounts, general ledger, or trust or custodial statements. You will be required to review, approve, and accept responsibility for the trial balance.

DocuSign Envelope ID: 2BF12FG2-5978-4B05-8C7A-73D08485A99E

June 18, 2021
U.S. Tobacco Cooperative 401(k) Plan
Page 5

- We will prepare a draft of your financial statements and related notes. Since the preparation and fair presentation of the financial statements is your responsibility, you will be required to review, approve, and accept responsibility for those financial statements prior to their issuance and have a responsibility to be in a position in fact and appearance to make an informed judgment on those financial statements.

- We will propose adjusting journal entries as needed. You will be required to review and approve those entries and to understand the nature of the changes and their impact on the financial statements.

**Use of financial statements**

The financial statements and our report thereon are for management's use. If you intend to reproduce and publish the financial statements and our report thereon, they must be reproduced in their entirety. Inclusion of the audited financial statements in a document, such as an annual report, should be done only with our prior approval of the document. You are responsible to provide us the opportunity to review such documents before issuance.

With regard to the electronic dissemination of audited financial statements, including financial statements published electronically on your website or submitted on a regulator website, you understand that electronic sites are a means to distribute information and, therefore, we are not required to read the information contained in those sites or to consider the consistency of other information in the electronic site with the original document.

We may issue preliminary draft financial statements to you for your review. Any preliminary draft financial statements should not be relied on or distributed.

**Engagement administration and other matters**

We understand that your employees will prepare all confirmations, account analyses, and audit schedules we request and will locate any documents or invoices selected by us for testing. A list of information we expect to need for our audit and the dates required will be provided in a separate communication.

We will provide copies of our reports to the plan; however, management is responsible for distribution of the reports and the financial statements.

The workpapers supporting the services we perform are the sole and exclusive property of CLA and constitute confidential and proprietary information. We do not provide access to our workpapers to you or anyone else in the normal course of business. Unless required by law or regulation to the contrary, we retain our workpapers in accordance with our record retention policy that typically provides for a retention period of seven years.

Pursuant to authority given by law or regulation, we may be requested to make certain workpapers available to the U.S. Department of Labor for their regulatory oversight purposes. We will notify you of any such request. Access to the requested workpapers will be provided to the regulators under the supervision of CLA personnel and at a location designated by our firm. Furthermore, upon request, we may provide copies of selected workpapers to the U.S. Department of Labor. The U.S. Department of Labor may intend, or decide, to distribute the copies or information contained therein to others, including other governmental agencies.

CLA will not disclose any confidential, proprietary, or privileged information of the plan to any persons without the authorization of plan management or unless required by law. This confidentiality provision does not prohibit us from disclosing your information to one or more of our affiliated companies in order to provide services that

DocuSign Envelope ID: 2BF12FG2-5978-4B0E-8C7A-73D09485A99E

June 18, 2021
U.S. Tobacco Cooperative 401(k) Plan
Page 6

you have requested from us or from any such affiliated company. Any such affiliated company shall be subject to the same restrictions on the use and disclosure of your information as apply to us.

Our engagement ends on delivery of our signed report. Any additional services that might be requested will be a separate, new engagement. The terms and conditions of that new engagement will be governed by a new, specific engagement letter for that service.

### Form 5500

As you have instructed, our engagement does not include preparation of the plan's Form 5500. Professional standards require that, before an auditor's report on the plan's financial statements can be included with a filed Form 5500 (including any related schedules), the auditor must review the Form 5500 and consider whether there are any material inconsistencies between the other information in the form and the audited financial statements (including the required supplemental schedules) or any material misstatement of fact. We will generally not issue our auditors' report until the completed Form 5500 has been provided for our review. If, however, our auditors' report is issued before the completed Form 5500 is provided for our review, our report should not be included with a Form 5500 filing without our approval.

### Mediation

Any disagreement, controversy, or claim ("Dispute") that may arise out of any aspect of our services or relationship with you, including this engagement, shall be submitted to non-binding mediation by written notice ("Mediation Notice") to the other party. In mediation, we will work with you to resolve any differences voluntarily with the aid of an impartial mediator.

The mediation will be conducted as specified by the mediator and agreed upon by the parties (i.e., you and CLA). The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the Dispute.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

Any Dispute will be governed by the laws of the state of Minnesota, without giving effect to choice of law principles.

### Time limitation

The nature of our services makes it difficult, with the passage of time, to gather and present evidence that fully and fairly establishes the facts underlying any Dispute that may arise between the parties. The parties agree that, notwithstanding any statute or law of limitations that might otherwise apply to a Dispute, including one arising out of this agreement or the services performed under this agreement, for breach of contract or fiduciary duty, tort, fraud, misrepresentation or any other cause of action or remedy, any action or legal proceeding by you against us must be commenced within twenty-four (24) months ("Limitation Period") after the date when we deliver our final audit report under this agreement to you, regardless of whether we do other services for you relating to the audit report, or you shall be forever barred from commencing a lawsuit or obtaining any legal or equitable relief or recovery.

DocuSign Envelope ID: 2BF12FG2.5978-4B0E-8C7A-73D08485A99E

June 18, 2021
U.S. Tobacco Cooperative 401(k) Plan
Page 7

The Limitation Period applies and begins to run even if you have not suffered any damage or loss, or have not become aware of the existence or possible existence of a Dispute.

**Fees**

Our professional fees will be billed based on the time involved and the degree of responsibility and skills required. We will also bill for expenses (including internal and administrative charges) plus a technology and client support fee of five percent (5%) of all professional fees billed. Based on our preliminary estimates, the total fees and expenses for the engagement should approximate $9,175 plus the 5% technology and client support fee. This estimate is based on anticipated cooperation from your personnel and their assistance with preparing confirmations and requested schedules. If the requested items are not available on the dates required or are not accurate, the fees and expenses will likely be higher. If unexpected circumstances require significant additional time, we will advise you before undertaking work that would require a substantial increase in the fee and expense estimate. Our invoices, including applicable state and local taxes, will be rendered each month as work progresses and are payable on presentation. In accordance with our firm policies, work may be suspended if your account becomes 30 days or more overdue and will not be resumed until your account is paid in full. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed even if we have not issued our report. You will be obligated to compensate us for all time expended and related fees and to reimburse us for all out-of-pocket expenditures through the date of termination.

*Unanticipated services*

We do not anticipate encountering the need to perform additional services beyond those described in this letter. If any such service needs to be completed before the audit can proceed in an efficient manner, we will notify you and provide a fair and reasonable price for providing the service. We will bill you for the service at periodic dates after the additional service has been performed.

### Additional work resulting from unanticipated changes in your organization or accounting records

If your organization undergoes significant changes in key personnel, accounting systems, and/or internal control, we are required to update our audit documentation and audit plan.

### Changes in engagement timing and assistance by your personnel

The fee estimate is based on anticipated cooperation from your personnel and their assistance with timely preparation of confirmations and requested schedules. If the requested items are not available on the dates required or are not accurate, we will advise management. Additional time and costs may be necessary because of such unanticipated delays. Examples of situations that may cause our estimated fee to increase include:

- Significant delays in responding to our requests for information such as reconciling variances or providing requested supporting documentation (e.g., invoices, contracts, and other documents)

- Rescheduling our fieldwork

- Schedule disruption caused by litigation, financial challenges (going concern), loan covenants (waivers), etc.

DocuSign Envelope ID: 2BF12FG2-5978-4B0E-8C7A-73D08485A89F

June 18, 2021
U.S. Tobacco Cooperative 401(k) Plan
Page 8

- Identifying a significant number of proposed audit adjustments

- Schedules prepared by your personnel that do not reconcile to the general ledger

- Numerous revisions to information and schedules provided by your personnel

- Restating financial statements for accounting errors in the prior year

- Lack of availability of plan personnel during audit fieldwork

### *Changes in accounting and audit standards*

Standard setters and regulators continue to evaluate and modify standards. Such changes may result in new or revised financial reporting and disclosure requirements or expand the nature, timing, and scope of the activities we are required to perform. To the extent that the amount of time required to provide the services described in this letter increases due to such changes, our fee may need to be adjusted. We will discuss such circumstances with you prior to performing the additional work.

### *Changes related to COVID-19*

COVID-19 continues to have significant direct and indirect impacts on financial reporting, disclosure requirements, and the nature, timing, and scope of the activities we are required to perform. To the extent that the amount of time required to provide the services described in this letter increases due to such changes, our fee may need to be adjusted. We will discuss such circumstances with you prior to performing the additional work.

### *Other fees*

You also agree to compensate us for any time and expenses, including time and expenses of legal counsel, we may incur in responding to discovery requests or participating as a witness or otherwise in any legal, regulatory, or other proceedings that we are asked to respond to on your behalf.

### *Finance charges and collection expenses*

You agree that if any statement is not paid within 30 days from its billing date, the unpaid balance shall accrue interest at the monthly rate of one and one-quarter percent (1.25%), which is an annual percentage rate of 15%. In the event that any collection action is required to collect unpaid balances due us, reasonable attorney fees and expenses shall be recoverable.

### Subcontractors

CLA may, at times, use subcontractors to perform services under this agreement, and they may have access to your information and records. Any such subcontractors will be subject to the same restrictions on the use of such information and records as apply to CLA under this agreement.

June 18, 2021
U.S. Tobacco Cooperative 401(k) Plan
Page 9

**Agreement**

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. This letter constitutes the entire agreement regarding these services and supersedes all prior agreements (whether oral or written), understandings, negotiations, and discussions between you and CLA. If you have any questions, please let us know. Please sign, date, and return a copy of this letter to us to indicate your acknowledgment and understanding of, and agreement with, the arrangements for our audit of your financial statements including the terms of our engagement and the parties' respective responsibilities.

Sincerely,

**CliftonLarsonAllen LLP**

DocuSigned by:

*Michele R. Reagan*

1A11DEDE7FB84D8...

Michele Reagan, CPA
Principal
919-239-8539
michele.reagan@CLAconnect.com

Enclosure


**Response:**

This letter correctly sets forth the understanding of U.S. Tobacco Cooperative 401(k) Plan.

DocuSigned by:

*keith Merrick*

Authorized governance signature: 79620712166884DA...

Title: _____Chief Financial Officer_____

Date: _____6/29/2021_____


DocuSigned by:

*Nikki Burke*

Authorized management signature: 52E347E10541402... _____

Title: ___HR Director_____

Date: ___6/21/2021_____

DocuSign Envelope ID: 2BE12FG2.5978.4B0E-8C7A-73D09485A99E



**CliftonLarsonAllen LLP**
4601 Six Forks Road, Suite 350
Raleigh, NC 27609

**phone** 919-781-3581  **fax** 919-881-0611
**CLAconnect.com**

June 18, 2021

Retirement Committee and Management
U.S. Tobacco Cooperative Inc. Retirement Plan
1304 Annapolis Dr.
Raleigh, North Carolina 27608

We are pleased to confirm our understanding of the terms and objectives of our engagement and the nature and limitations of the audit and nonaudit services CliftonLarsonAllen LLP ("CLA," "we," "us," and "our") will provide for U.S. Tobacco Cooperative Inc. ("you," "your," or "the plan sponsor") for the U.S. Tobacco Cooperative Inc. Retirement Plan (the plan) for the year ended April 30, 2021, in connection with the plan's annual reporting obligation under the Employee Retirement Income Security Act of 1974 (ERISA).

Michele Reagan is responsible for the performance of the audit engagement.

**Audit services**

Except as described below, we will audit the financial statements of U.S. Tobacco Cooperative Inc. Retirement Plan, which comprise the statement of net assets available for benefits as of April 30, 2021, and the related statement of changes in net assets available for benefits for the year then ended, and the related notes to the financial statements.

We will also evaluate and report on the form and content of the supplemental schedule(s) accompanying the financial statements. The financial statements and supplemental schedule(s) are required by the Department of Labor's (DOL) Rules and Regulations for Reporting and Disclosure under ERISA to be filed with federal Form 5500.

**Nonaudit services**

We will also provide the following nonaudit services:

- Preparation of a trial balance.

- Preparation of your financial statements and related notes.

- Preparation of adjusting journal entries.

**Audit objective**

Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America (U.S. GAAS) except that, as permitted by Regulation 2520.103-8 of the DOL's Rules and Regulations for Reporting and Disclosure under ERISA and as instructed by you, we will not perform any auditing procedures with respect to information prepared and certified by Wells Fargo Bank, N.A., the trustee, in accordance with DOL Regulation 2520.103-5, other than comparing the information with the related information included in the financial statements and supplemental schedule(s). Because of the significance of the information that we will not audit, we will not express an opinion on the financial statements and supplemental schedule(s) taken as a whole. The form and content of the information included in the financial statements and supplemental schedule(s), other



CLA is an independent member of Nexia International, a leading, global network of independent accounting and consulting firms. See nexia.com/member-firm-disclaimer for details.

DocuSign Envelope ID: 2BF12FG2-5978-4B0E-8C7A-73D08485A08F

June 18, 2021
U.S. Tobacco Cooperative Inc. Retirement Plan
Page 2

than that derived from the information certified by the trustee, will be audited by us in accordance with auditing standards generally accepted in the United States of America, and will be subjected to tests of your accounting records and other procedures we consider necessary to enable us to express an opinion that they are presented in compliance with the DOL's Rules and Regulations for Reporting and Disclosure under ERISA.

We will issue a written report upon completion of our audit of your financial statements. We cannot provide assurance that an unmodified opinion will be expressed on the form and content of the information included in the financial statements and supplemental schedule(s), other than that derived from the information certified by the trustee. Circumstances may arise in which it is necessary for us to modify our opinion, add an emphasis-of-matter or other-matter paragraph(s), or withdraw from the engagement. If our opinion is other than unmodified, we will discuss the reasons with you in advance. If circumstances occur related to the condition of your records, the availability of sufficient, appropriate audit evidence, or the existence of a significant risk of material misstatement of the financial statements caused by error, fraudulent financial reporting, or misappropriation of assets, which in our professional judgment prevent us from completing the audit or forming an opinion on the financial statements and supplemental schedule(s), other than that derived from the information certified by the trustee, we retain the right to take any course of action permitted by professional standards, including declining to express an opinion or issue a report, or withdrawing from the engagement.

**Auditor responsibilities, procedures, and limitations**

Except as described above, we will conduct our audit in accordance with U.S. GAAS. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error. An audit involves performing procedures to obtain sufficient appropriate audit evidence about the amounts and disclosures in the financial statements, except that assets and related transactions certified by the trustee will not be tested. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

There is an unavoidable risk, because of the inherent limitations of an audit, together with the inherent limitations of internal control, that some material misstatements may not be detected, even though the audit is properly planned and performed in accordance with U.S. GAAS, except as previously noted. Because we will not perform a detailed examination of all transactions, material misstatements, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations, including prohibited transactions with parties in interest or other violations of ERISA rules and regulations, that are attributable to the plan or to acts by management or employees acting on behalf of the plan, may not be detected.

In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management and those charged with governance of any material errors, fraudulent financial reporting, or misappropriation of assets that come to our attention. We will also inform the appropriate level of management and those charged with governance of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential, and will include prohibited transactions in the supplemental schedule of nonexempt transactions as required by the instructions to federal Form 5500.

DocuSign Envelope ID: 2BE12ZG2-5978-4B05-8C7A-73D08485A99E

June 18, 2021
U.S. Tobacco Cooperative Inc. Retirement Plan
Page 3

Except as previously noted, in making our risk assessments, we consider internal control relevant to the plan's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the plan's internal control. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, we will communicate to you in writing significant deficiencies or material weaknesses in internal control relevant to the audit of the financial statements that we identify during the audit.

In addition, we will perform certain procedures directed at considering the plan's compliance with applicable Internal Revenue Service (IRS) requirements for tax exempt status and ERISA plan qualification requirements. However, our audit is not specifically designed for and should not be relied upon to disclose matters affecting plan qualifications or compliance with the ERISA and IRS requirements. If during the audit we become aware of any instances of any such matters or ways in which management practices can be improved, we will communicate them to you.

Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

**Management responsibilities**

Our audit will be conducted on the basis that you (management and, when appropriate, those charged with governance) acknowledge and understand that you have certain responsibilities that are fundamental to the conduct of an audit.

You are responsible for the preparation and fair presentation of the financial statements in accordance with accounting principles generally accepted in the United States of America (U.S. GAAP), including the information certified by the trustee. Management's responsibilities include the selection and application of accounting principles; recording and reflecting all transactions in the financial statements; for establishing an accounting and financial reporting process for determining fair value measurements; determining the reasonableness of significant accounting estimates included in the financial statements; for the acceptance of the actuarial methods and assumptions used by the actuary; adjusting the financial statements to correct material misstatements; and confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error. You are responsible for the design, implementation, and maintenance of internal controls to prevent and detect fraud; assessing the risk that the financial statements may be materially misstated as a result of fraud; and for informing us about all known or suspected fraud affecting the plan involving (1) plan management, (2) employees who have significant roles in internal control, and (3) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the plan received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the plan complies with applicable laws and regulations, and informing us of all instances of identified or suspected noncompliance whose effects on the financial statements should be considered.

DocuSign Envelope ID: 2BF12FG2-5978-4B0E-8C7A-73D08485A88E

June 18, 2021
U.S. Tobacco Cooperative Inc. Retirement Plan
Page 4

You are responsible for providing us with (1) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, and for the accuracy and completeness of that information, including the accuracy and completeness of the information certified by the trustee; (2) additional information that we may request for the purpose of the audit; and (3) unrestricted access to persons within the plan from whom we determine it necessary to obtain audit evidence. You agree to inform us of events occurring or facts discovered subsequent to the date of the financial statements that may affect the financial statements.

Management is responsible for the preparation of the supplementary information in accordance with U.S. GAAP and the DOL's Rules and Regulations for Reporting and Disclosure under ERISA. You agree to include our report on the supplementary information in any document that contains, and indicates that we have reported on, the supplementary information. You also agree to include the audited financial statements with any presentation of the supplementary information that includes our report thereon or make the audited financial statements readily available to users of the supplementary information no later than the date the supplementary information is issued with our report thereon. You agree to provide us written representations related to the presentation of the supplementary information.

Management is responsible for providing us with a written confirmation concerning representations made by you and your staff to us in connection with the audit. During our engagement, we will request information and explanations from you regarding, among other matters, the plan's operations, internal control, future plans, specific transactions, and accounting systems and procedures. The procedures we will perform during our engagement and the conclusions we reach as a basis for our report will be heavily influenced by the representations that we receive in the representation letter and otherwise from you. Accordingly, inaccurate, incomplete, or false representations could cause us to expend unnecessary effort or could cause a material fraud or error to go undetected by our procedures. In view of the foregoing, you agree that we shall not be responsible for any misstatements in the plan's financial statements that we may fail to detect as a result of misrepresentations made to us by you.

**Responsibilities and limitations related to nonaudit services**

For all nonaudit services we may provide to you, management agrees to assume all management responsibilities; oversee the services by designating an individual, preferably within senior management, who possesses suitable skill, knowledge, and/or experience to understand and oversee the services; evaluate the adequacy and results of the services; and accept responsibility for the results of the services. Management is also responsible for ensuring that your data and records are complete and that you have received sufficient information to oversee the services.

The responsibilities and limitations related to the nonaudit services performed as part of this engagement are as follows:

- We will prepare a trial balance for use during the audit. Our preparation of the trial balance is limited to formatting information into a working trial balance based on management's chart of accounts, general ledger, or trust or custodial statements. You will be required to review, approve, and accept responsibility for the trial balance.

- We will prepare a draft of your financial statements and related notes. Since the preparation and fair presentation of the financial statements is your responsibility, you will be required to review, approve,

DocuSign Envelope ID: 2BF12ZG2-5978-4B0E-8C7A-73D08485A09E

and accept responsibility for those financial statements prior to their issuance and have a responsibility to be in a position in fact and appearance to make an informed judgment on those financial statements.

- We will propose adjusting journal entries as needed. You will be required to review and approve those entries and to understand the nature of the changes and their impact on the financial statements.

**Use of financial statements**

The financial statements and our report thereon are for management's use. If you intend to reproduce and publish the financial statements and our report thereon, they must be reproduced in their entirety. Inclusion of the audited financial statements in a document, such as an annual report, should be done only with our prior approval of the document. You are responsible to provide us the opportunity to review such documents before issuance.

With regard to the electronic dissemination of audited financial statements, including financial statements published electronically on your website or submitted on a regulator website, you understand that electronic sites are a means to distribute information and, therefore, we are not required to read the information contained in those sites or to consider the consistency of other information in the electronic site with the original document.

We may issue preliminary draft financial statements to you for your review. Any preliminary draft financial statements should not be relied on or distributed.

**Engagement administration and other matters**

We understand that your employees will prepare all confirmations, account analyses, and audit schedules we request and will locate any documents or invoices selected by us for testing. A list of information we expect to need for our audit and the dates required will be provided in a separate communication.

We will provide copies of our reports to the plan; however, management is responsible for distribution of the reports and the financial statements.

The workpapers supporting the services we perform are the sole and exclusive property of CLA and constitute confidential and proprietary information. We do not provide access to our workpapers to you or anyone else in the normal course of business. Unless required by law or regulation to the contrary, we retain our workpapers in accordance with our record retention policy that typically provides for a retention period of seven years.

Pursuant to authority given by law or regulation, we may be requested to make certain workpapers available to the U.S. Department of Labor for their regulatory oversight purposes. We will notify you of any such request. Access to the requested workpapers will be provided to the regulators under the supervision of CLA personnel and at a location designated by our firm. Furthermore, upon request, we may provide copies of selected workpapers to the U.S. Department of Labor. The U.S. Department of Labor may intend, or decide, to distribute the copies or information contained therein to others, including other governmental agencies.

CLA will not disclose any confidential, proprietary, or privileged information of the plan to any persons without the authorization of plan management or unless required by law. This confidentiality provision does not prohibit us from disclosing your information to one or more of our affiliated companies in order to provide services that you have requested from us or from any such affiliated company. Any such affiliated company shall be subject to the same restrictions on the use and disclosure of your information as apply to us.

DocuSign Envelope ID: 2BF12FG2-5978-4B9E-8C7A-73D02485A99E

June 18, 2021
U.S. Tobacco Cooperative Inc. Retirement Plan
Page 6

Our engagement ends on delivery of our signed report. Any additional services that might be requested will be a separate, new engagement. The terms and conditions of that new engagement will be governed by a new, specific engagement letter for that service.

**Form 5500**

As you have instructed, our engagement does not include preparation of the plan's Form 5500. Professional standards require that, before an auditor's report on the plan's financial statements can be included with a filed Form 5500 (including any related schedules), the auditor must review the Form 5500 and consider whether there are any material inconsistencies between the other information in the form and the audited financial statements (including the required supplemental schedules) or any material misstatement of fact. We will generally not issue our auditors' report until the completed Form 5500 has been provided for our review. If, however, our auditors' report is issued before the completed Form 5500 is provided for our review, our report should not be included with a Form 5500 filing without our approval.

**Mediation**

Any disagreement, controversy, or claim ("Dispute") that may arise out of any aspect of our services or relationship with you, including this engagement, shall be submitted to non-binding mediation by written notice ("Mediation Notice") to the other party. In mediation, we will work with you to resolve any differences voluntarily with the aid of an impartial mediator.

The mediation will be conducted as specified by the mediator and agreed upon by the parties (i.e., you and CLA). The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the Dispute.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

Any Dispute will be governed by the laws of the state of Minnesota, without giving effect to choice of law principles.

**Time limitation**

The nature of our services makes it difficult, with the passage of time, to gather and present evidence that fully and fairly establishes the facts underlying any Dispute that may arise between the parties. The parties agree that, notwithstanding any statute or law of limitations that might otherwise apply to a Dispute, including one arising out of this agreement or the services performed under this agreement, for breach of contract or fiduciary duty, tort, fraud, misrepresentation or any other cause of action or remedy, any action or legal proceeding by you against us must be commenced within twenty-four (24) months ("Limitation Period") after the date when we deliver our final audit report under this agreement to you, regardless of whether we do other services for you relating to the audit report, or you shall be forever barred from commencing a lawsuit or obtaining any legal or equitable relief or recovery.

The Limitation Period applies and begins to run even if you have not suffered any damage or loss, or have not become aware of the existence or possible existence of a Dispute.

DocuSign Envelope ID: 2BF12ZG2-5978-4B0E-8C7A-73D08485A99E

June 18, 2021
U.S. Tobacco Cooperative Inc. Retirement Plan
Page 7

**Fees**

Our professional fees will be billed based on the time involved and the degree of responsibility and skills required. We will also bill for expenses (including internal and administrative charges) plus a technology and client support fee of five percent (5%) of all professional fees billed. Based on our preliminary estimates, the total fees and expenses for the engagement should approximate $9,175 plus the 5% technology and client support fee. This estimate is based on anticipated cooperation from your personnel and their assistance with preparing confirmations and requested schedules. If the requested items are not available on the dates required or are not accurate, the fees and expenses will likely be higher. If unexpected circumstances require significant additional time, we will advise you before undertaking work that would require a substantial increase in the fee and expense estimate. Our invoices, including applicable state and local taxes, will be rendered each month as work progresses and are payable on presentation. In accordance with our firm policies, work may be suspended if your account becomes 30 days or more overdue and will not be resumed until your account is paid in full. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed even if we have not issued our report. You will be obligated to compensate us for all time expended and related fees and to reimburse us for all out-of-pocket expenditures through the date of termination.

*Unanticipated services*

We do not anticipate encountering the need to perform additional services beyond those described in this letter. If any such service needs to be completed before the audit can proceed in an efficient manner, we will notify you and provide a fair and reasonable price for providing the service. We will bill you for the service at periodic dates after the additional service has been performed.

### Additional work resulting from unanticipated changes in your organization or accounting records

If your organization undergoes significant changes in key personnel, accounting systems, and/or internal control, we are required to update our audit documentation and audit plan.

### Changes in engagement timing and assistance by your personnel

The fee estimate is based on anticipated cooperation from your personnel and their assistance with timely preparation of confirmations and requested schedules. If the requested items are not available on the dates required or are not accurate, we will advise management. Additional time and costs may be necessary because of such unanticipated delays. Examples of situations that may cause our estimated fee to increase include:

- Significant delays in responding to our requests for information such as reconciling variances or providing requested supporting documentation (e.g., invoices, contracts, and other documents)

- Rescheduling our fieldwork

- Schedule disruption caused by litigation, financial challenges (going concern), loan covenants (waivers), etc.

- Identifying a significant number of proposed audit adjustments

- Schedules prepared by your personnel that do not reconcile to the general ledger

DocuSign Envelope ID: 2BF12FG2-5978-4B2E-8C7A-73D02485A99E

June 18, 2021
U.S. Tobacco Cooperative Inc. Retirement Plan
Page 8

- Numerous revisions to information and schedules provided by your personnel

- Restating financial statements for accounting errors in the prior year

- Lack of availability of plan personnel during audit fieldwork

### Changes in accounting and audit standards

Standard setters and regulators continue to evaluate and modify standards. Such changes may result in new or revised financial reporting and disclosure requirements or expand the nature, timing, and scope of the activities we are required to perform. To the extent that the amount of time required to provide the services described in this letter increases due to such changes, our fee may need to be adjusted. We will discuss such circumstances with you prior to performing the additional work.

### Changes related to COVID-19

COVID-19 continues to have significant direct and indirect impacts on financial reporting, disclosure requirements, and the nature, timing, and scope of the activities we are required to perform. To the extent that the amount of time required to provide the services described in this letter increases due to such changes, our fee may need to be adjusted. We will discuss such circumstances with you prior to performing the additional work.

### Other fees

You also agree to compensate us for any time and expenses, including time and expenses of legal counsel, we may incur in responding to discovery requests or participating as a witness or otherwise in any legal, regulatory, or other proceedings that we are asked to respond to on your behalf.

### Finance charges and collection expenses

You agree that if any statement is not paid within 30 days from its billing date, the unpaid balance shall accrue interest at the monthly rate of one and one-quarter percent (1.25%), which is an annual percentage rate of 15%. In the event that any collection action is required to collect unpaid balances due us, reasonable attorney fees and expenses shall be recoverable.

### Subcontractors

CLA may, at times, use subcontractors to perform services under this agreement, and they may have access to your information and records. Any such subcontractors will be subject to the same restrictions on the use of such information and records as apply to CLA under this agreement.

June 18, 2021
U.S. Tobacco Cooperative Inc. Retirement Plan
Page 9

**Agreement**

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. This letter constitutes the entire agreement regarding these services and supersedes all prior agreements (whether oral or written), understandings, negotiations, and discussions between you and CLA. If you have any questions, please let us know. Please sign, date, and return the enclosed copy of this letter to us to indicate your acknowledgment and understanding of, and agreement with, the arrangements for our audit of your financial statements including the terms of our engagement and the parties' respective responsibilities.

Sincerely,

**CliftonLarsonAllen LLP**

_Michele R. Reagan_
1A11DEDE7FB84D8...

Michele Reagan, CPA
Principal
919-239-8539
michele.reagan@CLAconnect.com

Enclosure

**Response:**

This letter correctly sets forth the understanding of U.S. Tobacco Cooperative Inc. Retirement Plan.

Authorized governance signature: _Keith Merrick_ _____
                                  7962071216684DA...

Title: ____Chief Financial Officer_____

Date: __6/29/2021_____

Authorized management signature: _Nikki Burke_ _____
                                  52E347E10541402...

Title: ____HR Director_____

Date: __6/21/2021_____

**DocuSign**

## Certificate Of Completion

Envelope Id: 2BF127C259784B0E8C7A73D09485A08E                                    Status: Completed
Subject: CLA Engagement Letter/042-274200/042-274201 - US Tobacco
Client Name: US Tobacco Cooperative
Client Number: 042-274200
Source Envelope:
Document Pages: 18                      Signatures: 6                           Envelope Originator:
Certificate Pages: 5                    Initials: 0                             Leea Carter
AutoNav: Enabled                                                                220 South 6th Street
EnvelopeId Stamping: Enabled                                                    Suite 300
Time Zone: (UTC-08:00) Pacific Time (US & Canada)                               Minneapolis, MN  55402
                                                                               Leea.Carter@claconnect.com
                                                                               IP Address: 165.225.59.55

## Record Tracking

Status: Original                        Holder: Leea Carter                    Location: DocuSign
        6/21/2021 12:32:24 PM                   Leea.Carter@claconnect.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Michele A. Reagan<br>michele.reagan@claconnect.com<br>Principal<br>Security Level: Email, Account Authentication<br>(None) | *Michele A. Reagan*<br>1A11DEDE7FB84D8...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 104.129.205.121 | Sent: 6/21/2021 12:39:46 PM<br>Viewed: 6/21/2021 12:48:30 PM<br>Signed: 6/21/2021 12:49:26 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 6/21/2021 12:48:30 PM<br>ID: 00710f5e-82cd-4eed-a59f-452287bf3748 | | |
| Nikki Burke<br>nburke@usleaf.com<br>HR Director<br>Security Level: Email, Account Authentication<br>(None) | *Nikki Burke*<br>52E347E10541402...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 24.181.201.10 | Sent: 6/21/2021 12:49:28 PM<br>Viewed: 6/21/2021 1:01:43 PM<br>Signed: 6/21/2021 1:03:31 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 6/21/2021 1:01:43 PM<br>ID: 868068d1-896b-4899-b221-4f4d9d05ca97 | | |
| Keith Merrick<br>kmerrick@usleaf.com<br>Security Level: Email, Account Authentication<br>(None) | *keith Merrick*<br>796207121668 4DA...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 66.57.192.146 | Sent: 6/21/2021 1:03:33 PM<br>Viewed: 6/29/2021 5:59:45 AM<br>Signed: 6/29/2021 6:01:06 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 6/29/2021 5:59:45 AM<br>ID: a236fe6a-7735-4f46-9ac0-6974e4c1ff49 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Certified Delivery Events | Status | Timestamp |
| --- | --- | --- |

| Carbon Copy Events | Status | Timestamp |
| --- | --- | --- |

| Witness Events | Signature | Timestamp |
| --- | --- | --- |

| Notary Events | Signature | Timestamp |
| --- | --- | --- |

| Envelope Summary Events | Status | Timestamps |
| --- | --- | --- |
| Envelope Sent | Hashed/Encrypted | 6/21/2021 12:39:46 PM |
| Certified Delivered | Security Checked | 6/29/2021 5:59:45 AM |
| Signing Complete | Security Checked | 6/29/2021 6:01:06 AM |
| Completed | Security Checked | 6/29/2021 6:01:06 AM |

| Payment Events | Status | Timestamps |
| --- | --- | --- |

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 2/13/2019 6:04:31 AM
Parties agreed to: Michele A. Reagan, Nikki Burke, Keith Merrick

Case 21-01511-5-JNC    Doc 160    Filed 08/06/21    Entered 08/06/21 20:05:03    Page 29 of 60

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, CliftonLarsonAllen LLP (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

## Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

## Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

## Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

## All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact CliftonLarsonAllen LLP:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: BusinessTechnology@CLAconnect.com

**To advise CliftonLarsonAllen LLP of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at BusinessTechnology@CLAconnect.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from CliftonLarsonAllen LLP**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to BusinessTechnology@CLAconnect.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with CliftonLarsonAllen LLP**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to BusinessTechnology@CLAconnect.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify CliftonLarsonAllen LLP as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by CliftonLarsonAllen LLP during the course of your relationship with CliftonLarsonAllen LLP.



**CliftonLarsonAllen LLP**
10401 West Innovation Drive, Suite 300
Milwaukee, WI 53226

**phone** 414-476-1880  **fax** 414-476-7286
**CLAconnect.com**

June 7, 2021

U.S. Tobacco Cooperative, Inc. & Subs
1304 Annapolis Drive
Raleigh NC 27608

Re: Business Tax Returns Engagement Letter

We are pleased that U.S. Tobacco Cooperative, Inc. & Subs ("you," "your," or "the entity") has engaged CliftonLarsonAllen LLP ("CLA," "we," "us," and "our") to prepare the entity's federal and state (if applicable) income tax returns. This letter confirms the scope, limitations, and related terms of our engagement for the year ended April 30, 2021.

**Our responsibility to you**

We will prepare the entity's federal and state (if applicable) income tax returns in accordance with the applicable income tax laws. We will use our judgment in resolving questions where the law is unclear, and where there is reasonable authority, we will resolve questions in your favor whenever possible. We will not audit or otherwise verify the accuracy or completeness of the information we receive from you for the preparation of the returns, and our engagement cannot be relied upon to uncover errors or irregularities in the underlying information.

**Your responsibilities**

It is your responsibility to provide us with all of the information needed to prepare complete and accurate returns. We will have no obligation to prepare the returns until you have provided such information to us. We will prepare returns for the same states where the entity filed last year unless you notify us to the contrary or other information clearly indicates the need to file an additional state return. It is your responsibility to comply with all foreign jurisdiction filing requirements. We have no obligation to prepare returns for foreign jurisdictions.

The United States Supreme Court ruled in *South Dakota versus Wayfair* (6/21/18) that physical presence is no longer required to establish nexus for sales tax. This ruling may have broad implications, even beyond sales tax, as to where an entity is subject to tax. Please note that if the entity had a taxable presence in more than one jurisdiction, such as an employee or agent within the jurisdiction, any tangible property owned or rented within the jurisdiction, or if the entity exceeds any applicable economic nexus thresholds, the entity, its owners, or related entities may be subject to state or local income, sales, use, franchise, or gross receipts tax in that jurisdiction depending upon the particular facts. It is the entity's responsibility, not CLA's, to determine if assistance is needed in deciding whether the entity, its owners, or related entities may be liable for income, sales, use, franchise, or gross receipts tax, or have a filing requirement in the various state or local jurisdictions.

It is important for you to identify any ownership OR signature authority over a foreign bank account or other foreign financial assets which includes but is not limited to foreign: stocks, mutual funds, partnerships, bonds, retirement accounts, estates, trusts, annuities, swaps, and derivatives. Failure to disclose penalties can be significant, starting at $10,000 and can be upwards of 50 percent of the value of the asset. Please provide account statements if you have any foreign account ownership or signature authority. Note that these rules do not apply to foreign investments held by U.S. mutual funds. In addition, ownership in a foreign business entity (association, corporation, disregarded entity, or partnership) could trigger additional U.S. foreign informational reporting requirements. These reporting requirements require the disclosure of ownership, financial information, and related-party transactions. Failure to

 CLA is an independent member of Nexia International, a leading, global network of independent accounting and consulting firms. See nexia.com/member-firm-disclaimer for details.

June 7, 2021
U.S. Tobacco Cooperative, Inc. & Subs
Page 2

properly disclose ownership, related-party transactions, and the required information could trigger a penalty of up to $25,000 per filing. We cannot be held responsible if you fail to identify or provide such information to us.

For all nonattest services we may provide to you, including these tax services, management agrees to assume all management responsibilities; oversee the services by designating an individual, preferably within senior management, who possesses suitable skill, knowledge, and/or experience to understand and oversee the services; evaluate the adequacy and results of the services performed; and accept responsibility for the results of the services. Management is also responsible for ensuring that your data and records are complete and that you have received sufficient information to oversee the services. You are responsible to carefully review the returns that we prepare on your behalf before signing and submitting them to tax authorities. We will advise you with regard to tax positions taken in the preparation of the tax returns, but the responsibility for the tax returns remains with you.

**Tax examinations**

All returns are subject to potential examination by the IRS and state taxing authorities. In the event of an examination, we will be available, at your request, to assist or represent you. Services in connection with tax examinations are not included in our fee for preparation of your returns. Our fee for such services will be billed to you separately, along with any direct costs.

**Record retention**

You are responsible for retaining all documents, records, canceled checks, receipts, or other evidence in support of information and amounts reported on your tax returns. These items may be necessary in the event the taxing authority examines or challenges your returns. These records should be kept for at least seven years. Your copy of the tax returns should be retained indefinitely.

If carryover item(s) exist (e.g., capital loss, net operating loss, tax credits, etc.), you should retain the supporting records related to the carryover item(s) until the item has either been utilized (and the statute of limitations associated with the year of utilization has expired) or the carryforward period has expired.

In preparing the tax returns, we rely on your representation that you understand and have complied with these documentation requirements. You are responsible for the proper recording of transactions in the books of accounts, for the safeguarding of assets, and for the substantial accuracy of your financial records.

All of the records that you provide to us to prepare your tax returns will be returned to you after our use. Our working papers, including any copies of your records that we chose to make, are our property and will be retained by us in accordance with our established records retention policy. This policy states, in general, that we will retain our working papers for a period of seven years. After this period expires, our working papers and files will be destroyed. Furthermore, physical deterioration or catastrophic events may shorten the time our records are available. The working papers and files of our firm are not a substitute for the records of the entity.

**Tax consulting services**

This engagement letter also covers tax consulting services that may arise for which the entity seeks our consultation and advice, both written and oral, that are not the subject of a separate engagement letter. These additional services are not included in our fees for the preparation of the federal and state tax returns.

June 7, 2021
U.S. Tobacco Cooperative, Inc. & Subs
Page 3

We will base our tax analysis and conclusions on the facts you provide to us, and will not independently verify those facts. We will review the applicable tax law, tax regulations, and other tax authorities, all of which are subject to change. At your request, we will provide a memorandum of our conclusions. Written advice provided by us is for the entity's information and use only and is not to be provided to any third party without our express written consent.

Unless we are separately engaged to do so, we will not continuously monitor and update our advice for subsequent changes or modifications to the tax law and regulations, or to the related judicial and administrative interpretations.

### Communications and confidentiality

The Internal Revenue Code contains a limited privilege for confidentiality of tax advice between you and our firm. In addition, the laws of some states likewise recognize a confidentiality privilege for some accountant-client communications. You understand that CLA makes no representation, warranty or promise, and offers no opinion with respect to the applicability of any confidentiality privilege to any information supplied or communications you have with us, and, to the extent that we follow instructions from you to withhold such information or communications in the face of a request from a third party (including a subpoena, summons or discovery demand in litigation), you agree to hold CLA harmless should the privilege be determined not to apply to particular information or communications.

CLA will not disclose any confidential, proprietary, or privileged information of the entity to any persons without the authorization of entity management or unless required by law. This confidentiality provision does not prohibit us from disclosing your information to one or more of our affiliated companies in order to provide services that you have requested from us or from any such affiliated company. Any such affiliated company shall be subject to the same restrictions on the use and disclosure of your information as apply to us.

### Consent to send you publications and other materials

For your convenience, CLA produces a variety of publications, hard copy and electronic, to keep you informed about pertinent business and personal financial issues. This includes published articles, invitations to upcoming seminars, webinars and webcasts, newsletters, surveys, and press releases. To determine whether these materials may be of interest to you, CLA will need to use your tax return information. Such tax information includes the entity name and address as well as the business and financial information you provided to us.

By signing and dating this engagement letter, you authorize CLA to use the information that you provide to CLA during the preparation of your tax returns to determine whether to offer you relevant materials. Your consent is valid until further notice. If you do not wish to authorize such use, please strike out this paragraph prior to signing the engagement letter.

### Consent to use tax information for benchmarking analyses

In an effort to better serve the needs of our clients, we develop a variety of benchmark, performance indicator, and predictive analysis reports, using anonymized client data obtained from our audit, tax, and other engagements. Business and financial information that you provide to us may be combined with information from other clients and included within the aggregated data that we use in these reports. While some of these analytical reports will be published and released publicly, please be assured that the separate information that we obtain from you will remain confidential, as required by the AICPA Code of Professional Conduct.

Unless authorized by law or the client consents, we cannot use a client's tax return information for purposes other than the preparation and filing of the client's tax return. By signing and dating this engagement letter, you authorize CLA to use any and all information furnished to CLA for or in connection with the preparation of the tax returns under

this engagement letter, for a period of up to six (6) years from the date of this engagement letter, in connection with CLA's preparation of the types of reports described in the foregoing paragraph. If you do not wish to authorize such use, please strike out this section prior to signing the engagement letter.

**Limitations**

You agree that it is appropriate to limit the liability of CLA, its partners, principals, directors, officers, employees, and agents (each a "CLA party") and that this limitation of remedies provision is governed by the laws of the state of Minnesota, without giving effect to choice of law principles.

The exclusive remedy available to you shall be the right to pursue claims for actual damages that are directly caused by acts or omissions that are breaches by a CLA party of our duties owed under this engagement agreement, but any recovery on any such claim shall not exceed the portion of the total fees actually paid by you to CLA that corresponds to the particular service(s) that give(s) rise to the claim (i.e., the specific service(s) that a CLA party performed in such a manner as to cause CLA to be liable to you).

The nature of our services makes it difficult, with the passage of time, to gather and present evidence that fully and fairly establishes the facts underlying any dispute that may arise between you and any CLA party. The parties (you and CLA) agree that, notwithstanding any statute or law of limitations that might otherwise apply to a dispute, including one arising out of this agreement or the services performed under this agreement, for breach of contract or fiduciary duty, tort, fraud, misrepresentation or any other cause of action or remedy, any action or legal proceeding by you against any CLA party must be commenced as provided below, or you shall be forever barred from commencing a lawsuit or obtaining any legal or equitable relief or recovery. An action to recover on a dispute shall be commenced within the shorter of these periods ("Limitation Period"):

- For tax return preparation, separately within thirty-six (36) months after the date when we deliver any final tax return(s) under this agreement to you on which the dispute is based, regardless of whether any CLA party provides other services for you or relating to said return(s).

- For tax consulting engagements, separately within thirty-six (36) months from the date of our last billing for services on each consultation on which the dispute is based.

- For all tax return and tax consulting engagements, within twelve (12) months from the date when you terminate this or any other engagement of our services.

The applicable Limitation Period applies and begins to run even if you have not suffered any damage or loss, or have not become aware of the existence or possible existence of a dispute.

**Fees**

Our professional fees will be billed based on the time involved and skills required. We will also bill for expenses (including internal and administrative charges) plus a technology and client support fee of five percent (5%) of all professional fees billed. We may need to perform additional services related to the Tax Cuts and Jobs Act (tax reform). Fees and expenses for this work will be invoiced separately. Our invoices, including applicable state and local taxes, will be rendered each month as work progresses and are payable on presentation. In accordance with our firm policies, work may be suspended if your account becomes 30 days or more overdue and will not be resumed until your account is paid in full. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed even if we have not issued the tax returns. You will be obligated to compensate us for all time expended and related fees and to reimburse us for all out-of-pocket expenditures through the date of termination.

June 7, 2021
U.S. Tobacco Cooperative, Inc. & Subs
Page 5

*Other fees*

You also agree to compensate us for any time and expenses, including time and expenses of legal counsel, we may incur in responding to discovery requests or participating as a witness or otherwise in any legal, regulatory, or other proceedings that we are asked to respond to on your behalf.

*Finance charges and collection expenses*

You agree that if any statement is not paid within 30 days from its billing date, the unpaid balance shall accrue interest at the monthly rate of one and one-quarter percent (1.25%), which is an annual percentage rate of 15%. In the event that any collection action is required to collect unpaid balances due us, reasonable attorney fees and expenses shall be recoverable.

**Termination of agreement**

Either party may terminate this agreement at any time by giving written notice to the other party. In that event, the provisions of this agreement shall continue to apply to all services rendered prior to termination.

**Agreement**

Please sign and date the enclosed copy of this letter to confirm your agreement and return it to us at your earliest convenience.

We are looking forward to working with you.

Sincerely,

**CliftonLarsonAllen LLP**

Rebecca L. Thoune, CPA
Signing Director
414-721-7513
rebecca.thoune @CLAconnect.com

Enclosure

**Response:**

This letter correctly sets forth the understanding of U.S. Tobacco Cooperative, Inc. & Subs.

Authorized Signature: _____

Title: _____

Date: _____



CLA (CliftonLarsonAllen LLP)
420 South Orange Avenue, Suite 500
Orlando, FL 32801-3399
407-802-1200 | fax 407-802-1250
CLAconnect.com

May 17, 2021

Audit Committee and Management
Attn: Mr. Keith H. Merrick, Chief Financial Officer
U.S. Tobacco Cooperative, Inc.
1304 Annapolis Drive
Raleigh NC  27608

Dear Mr. Merrick:

We are pleased to confirm our understanding of the terms and objectives of our engagement and the nature and limitations of the audit and nonaudit services CliftonLarsonAllen LLP ("CLA," "we," "us," and "our") will provide for U.S. Tobacco Cooperative, Inc. ("you," "your," or "the entity") for the year ended April 30, 2021.

Jeff Hardin is responsible for the performance of the audit engagement.

**Audit services**

We will audit the consolidated financial statements of U.S. Tobacco Cooperative, Inc., which comprise the consolidated balance sheet as of April 30, 2021, and the related consolidated statements of operations, comprehensive income, stockholders' equity, and cash flows for the year then ended, and the related notes to the consolidated financial statements.

We will also evaluate and report on the presentation of the supplementary information accompanying the financial statements in relation to the financial statements as a whole.

**Nonaudit services**

We will also provide the following nonaudit services:

- Preparation of your financial statements and related notes.

- Preparation of adjusting journal entries.

**Audit objective**

The objective of our audit is the expression of an opinion about whether your financial statements are fairly presented, in all material respects, in conformity with accounting principles generally accepted in the United States of America (U.S. GAAP). Our audit will be conducted in accordance with auditing standards generally accepted in the United States of America (U.S. GAAS) and will include tests of your accounting records and other procedures we consider necessary to enable us to express such an opinion. We will also perform procedures to enable us to express an opinion on whether the supplementary information accompanying the financial statements is fairly stated, in all material respects, in relation to the financial statements as a whole.

We will issue a written report upon completion of our audit of your financial statements. We cannot provide assurance that an unmodified opinion will be expressed. Circumstances may arise in which it is necessary for us to modify our opinion, add an emphasis-of-matter or other-matter paragraph(s), or withdraw from the engagement. If our opinion is other than unmodified, we will discuss the reasons with you in advance. If


A member of
Nexia
International

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 2

circumstances occur related to the condition of your records, the availability of sufficient, appropriate audit evidence, or the existence of a significant risk of material misstatement of the financial statements caused by error, fraudulent financial reporting, or misappropriation of assets, which in our professional judgment prevent us from completing the audit or forming an opinion on the financial statements, we retain the right to take any course of action permitted by professional standards, including declining to express an opinion or issue a report, or withdrawing from the engagement.

**Auditor responsibilities, procedures, and limitations**

We will conduct our audit in accordance with U.S. GAAS. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements as a whole are free from material misstatement, whether due to fraud or error. An audit involves performing procedures to obtain sufficient appropriate audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

There is an unavoidable risk, because of the inherent limitations of an audit, together with the inherent limitations of internal control, that some material misstatements may not be detected, even though the audit is properly planned and performed in accordance with U.S. GAAS. Because we will not perform a detailed examination of all transactions, material misstatements, whether from (1) errors, (2) fraudulent financial reporting, (3) misappropriation of assets, or (4) violations of laws or governmental regulations that are attributable to the entity or to acts by management or employees acting on behalf of the entity, may not be detected.

In addition, an audit is not designed to detect immaterial misstatements or violations of laws or governmental regulations that do not have a direct and material effect on the financial statements. However, we will inform the appropriate level of management and those charged with governance of any material errors, fraudulent financial reporting, or misappropriation of assets that come to our attention. We will also inform the appropriate level of management and those charged with governance of any violations of laws or governmental regulations that come to our attention, unless clearly inconsequential.

In making our risk assessments, we consider internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. An audit is not designed to provide assurance on internal control or to identify deficiencies in internal control. However, we will communicate to you in writing significant deficiencies or material weaknesses in internal control relevant to the audit of the financial statements that we identify during the audit.

Our responsibility as auditors is limited to the period covered by our audit and does not extend to any later periods for which we are not engaged as auditors.

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 3

**Management responsibilities**

Our audit will be conducted on the basis that you (management and, when appropriate, those charged with governance) acknowledge and understand that you have certain responsibilities that are fundamental to the conduct of an audit.

You are responsible for the preparation and fair presentation of the financial statements in accordance with U.S. GAAP. Management's responsibilities include the selection and application of accounting principles; recording and reflecting all transactions in the financial statements; determining the reasonableness of significant accounting estimates included in the financial statements; adjusting the financial statements to correct material misstatements; and confirming to us in the management representation letter that the effects of any uncorrected misstatements aggregated by us during the current engagement and pertaining to the latest period presented are immaterial, both individually and in the aggregate, to the financial statements taken as a whole.

You are responsible for the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error. You are responsible for the design, implementation, and maintenance of internal controls to prevent and detect fraud; assessing the risk that the financial statements may be materially misstated as a result of fraud; and for informing us about all known or suspected fraud affecting the entity involving (1) management, (2) employees who have significant roles in internal control, and (3) others where the fraud could have a material effect on the financial statements. Your responsibilities include informing us of your knowledge of any allegations of fraud or suspected fraud affecting the entity received in communications from employees, former employees, regulators, or others. In addition, you are responsible for identifying and ensuring that the entity complies with applicable laws and regulations, and informing us of all instances of identified or suspected noncompliance whose effects on the financial statements should be considered.

You are responsible for providing us with (1) access to all information of which you are aware that is relevant to the preparation and fair presentation of the financial statements, such as records, documentation, and other matters, and for the accuracy and completeness of that information; (2) additional information that we may request for the purpose of the audit; and (3) unrestricted access to persons within the entity from whom we determine it necessary to obtain audit evidence. You agree to inform us of events occurring or facts discovered subsequent to the date of the financial statements that may affect the financial statements.

Management is responsible for the preparation of the supplementary information in accordance with U.S. GAAP. You agree to include our report on the supplementary information in any document that contains, and indicates that we have reported on, the supplementary information. You also agree to include the audited financial statements with any presentation of the supplementary information that includes our report thereon or make the audited financial statements readily available to users of the supplementary information no later than the date the supplementary information is issued with our report thereon. You agree to provide us written representations related to the presentation of the supplementary information.

Management is responsible for providing us with a written confirmation concerning representations made by you and your staff to us in connection with the audit. During our engagement, we will request information and explanations from you regarding, among other matters, the entity's operations, internal control, future plans, specific transactions, and accounting systems and procedures. The procedures we will perform during our engagement and the conclusions we reach as a basis for our report will be heavily influenced by the

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 4

representations that we receive in the representation letter and otherwise from you. Accordingly, inaccurate, incomplete, or false representations could cause us to expend unnecessary effort or could cause a material fraud or error to go undetected by our procedures. In view of the foregoing, you agree that we shall not be responsible for any misstatements in the entity's financial statements that we may fail to detect as a result of misrepresentations made to us by you.

**Responsibilities and limitations related to nonaudit services**

For all nonaudit services we may provide to you, management agrees to assume all management responsibilities; oversee the services by designating an individual, preferably within senior management, who possesses suitable skill, knowledge, and/or experience to understand and oversee the services; evaluate the adequacy and results of the services; and accept responsibility for the results of the services. Management is also responsible for ensuring that your data and records are complete and that you have received sufficient information to oversee the services.

The responsibilities and limitations related to the nonaudit services performed as part of this engagement are as follows:

- We will prepare a draft of your financial statements and related notes. Since the preparation and fair presentation of the financial statements is your responsibility, you will be required to review, approve, and accept responsibility for those financial statements prior to their issuance and have a responsibility to be in a position in fact and appearance to make an informed judgment on those financial statements.

- We will propose adjusting journal entries as needed. You will be required to review and approve those entries and to understand the nature of the changes and their impact on the financial statements.

**Use of financial statements**

The financial statements and our report thereon are for management's use. If you intend to reproduce and publish the financial statements and our report thereon, they must be reproduced in their entirety. Inclusion of the audited financial statements in a document, such as an annual report or an offering document, should be done only with our prior approval of the document. You are responsible to provide us the opportunity to review such documents before issuance.

If the parties (i.e., you and CLA) agree that CLA will not be involved with your official statements related to municipal securities filings or other offering documents, we will require that any official statements or other offering documents issued by you with which we are not involved clearly indicate that CLA is not involved with the contents of such documents. Such disclosure should read as follows:

CliftonLarsonAllen LLP, our independent auditor, has not been engaged to perform and has not performed, since the date of its report included herein, any procedures on the financial statements addressed in that report. CliftonLarsonAllen LLP also has not performed any procedures relating to this offering document.

With regard to the electronic dissemination of audited financial statements, including financial statements published electronically on your website or submitted on a regulator website, you understand that electronic sites are a means to distribute information and, therefore, we are not required to read the information

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 5

contained in those sites or to consider the consistency of other information in the electronic site with the original document.

We may issue preliminary draft financial statements to you for your review. Any preliminary draft financial statements should not be relied on or distributed.

**Engagement administration and other matters**

We understand that your employees will prepare all confirmations, account analyses, and audit schedules we request and will locate any documents or invoices selected by us for testing. A list of information we expect to need for our audit and the dates required will be provided in a separate communication.

The workpapers supporting the services we perform are the sole and exclusive property of CLA and constitute confidential and proprietary information. We do not provide access to our workpapers to you or anyone else in the normal course of business. Unless required by law or regulation to the contrary, we retain our workpapers in accordance with our record retention policy that typically provides for a retention period of seven years.

Except as permitted by the "Consent" section of this agreement, CLA will not disclose any confidential, proprietary, or privileged information of the entity to any persons without the authorization of entity management or unless required by law. This confidentiality provision does not prohibit us from disclosing your information to one or more of our affiliated companies in order to provide services that you have requested from us or from any such affiliated company. Any such affiliated company shall be subject to the same restrictions on the use and disclosure of your information as apply to us.

Our relationship with you is limited to that described in this letter. As such, you understand and agree that we are acting solely as independent accountants. We are not acting in any way as a fiduciary or assuming any fiduciary responsibilities for you. We are not responsible for the preparation of any report to any governmental agency, or any other form, return, or report or for providing advice or any other service not specifically recited in this letter.

Our engagement ends on delivery of our signed report. Any additional services that might be requested will be a separate, new engagement. The terms and conditions of that new engagement will be governed by a new, specific engagement letter for that service.

**Mediation**

Any disagreement, controversy, or claim ("Dispute") that may arise out of any aspect of our services or relationship with you, including this engagement, shall be submitted to non-binding mediation by written notice ("Mediation Notice") to the other party. In mediation, we will work with you to resolve any differences voluntarily with the aid of an impartial mediator.

The mediation will be conducted as specified by the mediator and agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with the assistance of the mediator, to reach an amicable resolution of the Dispute.

Each party will bear its own costs in the mediation. The fees and expenses of the mediator will be shared equally by the parties.

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 6

Any Dispute will be governed by the laws of the state of Minnesota, without giving effect to choice of law principles.

## Time limitation

The nature of our services makes it difficult, with the passage of time, to gather and present evidence that fully and fairly establishes the facts underlying any Dispute that may arise between the parties. The parties agree that, notwithstanding any statute or law of limitations that might otherwise apply to a Dispute, including one arising out of this agreement or the services performed under this agreement, for breach of contract or fiduciary duty, tort, fraud, misrepresentation or any other cause of action or remedy, any action or legal proceeding by you against us must be commenced within twenty-four (24) months ("Limitation Period") after the date when we deliver our final audit report under this agreement to you, regardless of whether we do other services for you relating to the audit report, or you shall be forever barred from commencing a lawsuit or obtaining any legal or equitable relief or recovery.

The Limitation Period applies and begins to run even if you have not suffered any damage or loss, or have not become aware of the existence or possible existence of a Dispute.

## Fees

Our professional fees will be billed based on the time involved and the degree of responsibility and skills required. We will also bill for expenses (including internal and administrative charges) plus a technology and client support fee of five percent (5%) of all professional fees billed. Based on our preliminary estimates, the total fees and expenses for the engagement should approximate $110,000. This estimate is based on anticipated cooperation from your personnel and their assistance with preparing confirmations and requested schedules. If the requested items are not available on the dates required or are not accurate, the fees and expenses will likely be higher. If unexpected circumstances require significant additional time, we will advise you before undertaking work that would require a substantial increase in the fee and expense estimate. Our invoices, including applicable state and local taxes, will be rendered each month as work progresses and are payable on presentation. In accordance with our firm policies, work may be suspended if your account becomes 30 days or more overdue and will not be resumed until your account is paid in full. If we elect to terminate our services for nonpayment, our engagement will be deemed to have been completed even if we have not issued our report. You will be obligated to compensate us for all time expended and related fees and to reimburse us for all out-of-pocket expenditures through the date of termination.

### *Unanticipated services*

We do not anticipate encountering the need to perform additional services beyond those described in this letter. Below are listings of services considered to be outside the scope of our engagement. If any such service needs to be completed before the audit can proceed in an efficient manner, we will notify you and provide a fair and reasonable price for providing the service. We will bill you for the service at periodic dates after the additional service has been performed.

#### Bookkeeping services

Bookkeeping services are not audit services. Bookkeeping services include the following activities:

- Preparation of a trial balance

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 7

- Account reconciliations

- Bank statement reconciliations

- Capital asset accounting (e.g., calculating depreciation, identify capital assets for additions and deletions)

- Calculating accruals

- Analyzing transactions for proper recording

- Converting cash basis accounting records to accrual basis

- Processing immaterial adjustments through the financial statements

- Adjusting the financial statements for new activities and new disclosures

**Additional work resulting from unanticipated changes in your organization or accounting records**

If your organization undergoes significant changes in key personnel, accounting systems, and/or internal control, we are required to update our audit documentation and audit plan. The following are examples of situations that will require additional audit work:

- Revising documentation of your internal control for changes resulting from your implementation of new information systems

- Deterioration in the quality of the entity's accounting records during the current-year engagement in comparison to the prior-year engagement

- Significant new accounting issues

- Significant changes in your volume of business

- Mergers, acquisitions, or other business combinations

- New or unusual transactions

- Changes in audit scope or requirements resulting from changes in your operations

- Erroneous or incomplete accounting records

- Evidence of material weaknesses or significant deficiencies in internal control

- Substantial increases in the number or significance of problem loans

- Regulatory examination matters

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 8

- Implementation or adoption of new or existing accounting, reporting, regulatory, or tax requirements

- New financial statement disclosures

**Changes in engagement timing and assistance by your personnel**

The fee estimate is based on anticipated cooperation from your personnel and their assistance with timely preparation of confirmations and requested schedules. If the requested items are not available on the dates required or are not accurate, we will advise management. Additional time and costs may be necessary because of such unanticipated delays. Examples of situations that may cause our estimated fee to increase include:

- Significant delays in responding to our requests for information such as reconciling variances or providing requested supporting documentation (e.g., invoices, contracts, and other documents)

- Rescheduling our fieldwork

- Schedule disruption caused by litigation, financial challenges (going concern), loan covenants (waivers), etc.

- Identifying a significant number of proposed audit adjustments

- Schedules prepared by your personnel that do not reconcile to the general ledger

- Numerous revisions to information and schedules provided by your personnel

- Restating financial statements for accounting errors in the prior year

- Lack of availability of entity personnel during audit fieldwork

*Changes in accounting and audit standards*

Standard setters and regulators continue to evaluate and modify standards. Such changes may result in new or revised financial reporting and disclosure requirements or expand the nature, timing, and scope of the activities we are required to perform. To the extent that the amount of time required to provide the services described in this letter increases due to such changes, our fee may need to be adjusted. We will discuss such circumstances with you prior to performing the additional work.

*Changes related to COVID-19*

COVID-19 continues to have significant direct and indirect impacts on financial reporting, disclosure requirements, and the nature, timing, and scope of the activities we are required to perform. To the extent that the amount of time required to provide the services described in this letter increases due to such changes, our fee may need to be adjusted. We will discuss such circumstances with you prior to performing the additional work.

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 9

### Other fees

You also agree to compensate us for any time and expenses, including time and expenses of legal counsel, we may incur in responding to discovery requests or participating as a witness or otherwise in any legal, regulatory, or other proceedings that we are asked to respond to on your behalf.

### Finance charges and collection expenses

You agree that if any statement is not paid within 30 days from its billing date, the unpaid balance shall accrue interest at the monthly rate of one and one-quarter percent (1.25%), which is an annual percentage rate of 15%. In the event that any collection action is required to collect unpaid balances due us, reasonable attorney fees and expenses shall be recoverable.

### Consent

#### Consent to use financial information

Annually, we assemble a variety of benchmarking analyses using client data obtained through our audit and other engagements. Some of this benchmarking information is published and released publicly. However, the information that we obtain is confidential, as required by the AICPA Code of Professional Conduct. Your acceptance of this engagement letter will serve as your consent to use of U.S. Tobacco Cooperative, Inc.'s information in these cost comparison, performance indicator, and/or benchmarking reports.

### Subcontractors

CLA may, at times, use subcontractors to perform services under this agreement, and they may have access to your information and records. Any such subcontractors will be subject to the same restrictions on the use of such information and records as apply to CLA under this agreement.

### Agreement

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes the significant terms of our engagement. This letter constitutes the entire agreement regarding these services and supersedes all prior agreements (whether oral or written), understandings, negotiations, and discussions between you and CLA. If you have any questions, please let us know. Please sign, date, and return a copy of this letter to us to indicate your acknowledgment and understanding of, and agreement with, the arrangements for our audit of your financial statements including the terms of our engagement and the parties' respective responsibilities.

Sincerely,

**CliftonLarsonAllen LLP**

Jeff Hardin, CPA
Principal
407-802-1316
Jeff.hardin@CLAconnect.com

May 17, 2021
U.S. Tobacco Cooperative, Inc.
Page 10


**Response:**

This letter correctly sets forth the understanding of U.S. Tobacco Cooperative, Inc.


_____
Oscar J. House III, President and Chief Executive Officer


_____
Keith H. Merrick, Chief Financial Officer



CliftonLarsonAllen LLP
CNL Center II
420 South Orange Avenue, Suite 500
Orlando, FL 32801-3399
407-802-1200 | fax 407-802-1250
CLAconnect.com

December 1, 2020

Mr. Edward W. Kacsuta
Chief Financial Officer
1304 Annapolis Drive
Raleigh, NC 27608

Dear Ed:

Thank you for another successful year collaborating to meet the professional service needs for U.S. Tobacco Cooperative, Inc. (USTC).  We have many years of success working together and look forward too many more.  Per your request, we are providing you a three-year fee quote for your planning purposes.  Please see the below fee schedule for your consideration.

| Professional Services | 4/30/2021 | 4/30/2022 | 4/30/2023 |
|---|---|---|---|
| Audit of Consolidated Financial Statements | $110,000 | $114,000 | 118,500 |
| Implementation of new accounting standard (1) | N/A | $5,500 | N/A |
| Preparation of Federal and State Tax Returns (2) | $59,800 | $61,600 | $63,500 |
| Audit of the Pension plan | $9,000 | $9,300 | $9,600 |
| Audit of the 401(k) plan | $9,000 | $9,300 | $9,600 |
| Out of pocket expenses - estimate | $13,000 | $13,000 | $13,000 |
| Technology and Support Fee (5%) | $9,390 | $9,985 | $10,060 |

(1) - Expected adoption of Accounting Standards Update No. 2016-02 0 *Leases*
(2) Fee estimate is based on the federal and state tax returns prepared for the April 30, 2020 year-end.



November 16, 2020
U.S. Tobacco Cooperative, Inc.
Page 2

Included in the above fee quotes are the following professional services:

      Calculation or preparation of the patronage dividends
      Attendance at audit committee and annual shareholder meetings as requested
      Quarterly meetings with management and/or the board of directors, as required
      Routine phone calls and questions up to 4 hours of research or consultations
      Updates on newly released accounting standards
      Updates on tax law changes
      Access to CLA thought leadership and publications

When you have had the opportunity to review the schedule, please call me to discuss.

Sincerely,

**CliftonLarsonAllen LLP**

Jeff Hardin, CPA
Principal
407-802-1316
jeff.hardin@CLAconnect.com

**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| U.S. Tobacco Cooperative Inc., *et al.*[1] | ) | Case No. 21-01511-5-JNC |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

<u>**DECLARATION OF JEFFREY HARDIN**</u>

I, Jeffrey Hardin, declare under penalty of perjury as follows:

1.      I am a principal at CliftonLarsonAllen LLP ("<u>CLA</u>"), an accounting firm providing integrated wealth advisory, outsourcing, audit, consulting, and tax services to clients that span a broad industry spectrum, including agribusiness.

2.      I am a certified public accountant with over 19 years of public accounting experience providing audit and other assurance work, with a concentration on agribusiness clients. I am a member of the Florida Institute of Certified Public Accountants and the National Institute of Certified Public Accountants.

3.      I am familiar with the matters set forth herein and submit this this declaration (the "<u>Hardin Declaration</u>") on behalf of CLA in support of the application (the "<u>Application</u>," and all undefined terms herein having the meanings set forth in the Application) of the above-captioned debtors and debtors in possession (each a "<u>Debtor</u>," and collectively, the "<u>Debtors</u>"), seeking authority to employ and retain employ CLA as accountant to the Debtors, effective as of August

---

[1] The Debtors in these Chapter 11 Cases are the following entities (the last four digits of each Debtor's respective federal tax identification number, if any, follow in parentheses): U.S. Tobacco Cooperative Inc. (4598); U.S. Flue-Cured Tobacco Growers, Inc. (9823); Premier Manufacturing, Inc. (3251); Franchise Wholesale Co., L.L.C. (7518); Big South Distribution, LLC (4164); and King Maker Marketing, Inc. (4533). The Debtors' corporate headquarters are located at 1304 Annapolis Drive, Raleigh, NC 27608.

6, 2021, pursuant to sections 327, 328 and 330 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4.      I am not, nor is CLA, an insider of the Debtors.

5.      As described more fully in the Engagement Agreements, the Debtors seek to retain CLA to provide audit and tax services (the "Services") which include, but are not limited to, the following:

      a.  ***Audit of Consolidated Financial Reports.***  Audit of the consolidated financial statements of the Debtors, comprising the consolidated balance sheet as of April 30, 2020 and 2021, and the consolidated statements of operations, comprehensive income, members' equity and cash flows for the years ended April 30, 2020 and 2021 (the "2021 Financial Audit").  CLA began the 2021 Financial Audit pre-petition and received approximately $100,551.06 in fees and expenses relating to those services.

      b.  ***401(k) Plan Audits.***  Audit of the financial statements of the 401k Plan as of and for the year ended December 31, 2020 (the "401(k) Audit").  As of the Petition Date, CLA had performed administrative functions associated with the setup of the 401(k) Audit and received $950 in fees, plus a 5% Support Fee (as defined below) relating to those services.

      c.  ***Pension Plan Audit.***  Audit of the financial statements of the Pension Plan as of and for the year ended April 30, 2021 (the "Pension Audit").  As of the Petition Date, CLA had performed administrative functions associated with the setup of the Pension Plan Audit and received $785 in fees, plus a 5% Support Fee (as defined below) relating to those services.

      d.  ***Tax Return Services.***  Prepare the Debtors' applicable federal and state income tax returns, consult on particular tax issues that may arise in the course of the Debtors' operations, provide quarterly federal tax payment estimates, file for appropriate extensions (due on August 15, 2021), (the "Tax Return Services").  As of the Petition Date, CLA had not begun work or received payment for the Tax Return Services.

      e.  ***State Tax Consulting.***  Respond to tax notices issued to the Debtors by various state taxing authorities (the "State Tax Consulting").

      f.  And all other audit, tax and accounting services requested by the Debtors during these Chapter 11 Cases.

2

6.      CLA has acted as the Debtors' financial and tax accountant since 2015 and is familiar with the Debtors' business and financial affairs.  I believe that CLA is well qualified and able to provide the Services set forth in the Engagement Agreements and Application in an efficient and cost-effective matter.

## DISINTERESTEDNESS

7.      As of the Petition Date, CLA held a prepetition claim against the Debtors in the approximate amount of $14,749.00 (the "CLA Claim").  CLA has agreed to waive the CLA Claim.

8.      CLA does not hold any other claim, debt or equity security of the Debtors.

9.      CLA has attempted to determine its past and present connections, if any, with the Debtors, their creditors, or any parties in interest, their respective attorneys or accountants, the Bankruptcy Administrator or any person employed by the Bankruptcy Administrator.   In particular, CLA obtained from the Debtors and/or their representatives the names of the individuals and entities that may be parties in interest in these Chapter 11 Cases.  Such parties are listed in *Schedule 1* to this Declaration.  To the extent that CLA's search of its relationships with the Potential Parties-in-Interest indicated that CLA currently advises, previously advised, or has a connection with any of the Potential Parties-in-Interest, the identities of such Potential Parties-in-Interest are set forth in *Schedule 2* hereto.

10.      To the best of my present knowledge, and unless otherwise disclosed in this Declaration, neither CLA nor any of its representatives, insofar as I have been able to ascertain, holds any interest materially adverse to the interest of the Debtors' estates or to any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.

11.     I believe that CLA, and each of its representatives, is a "disinterested person" within the meaning of sections 101(14) and 327(a) of the Bankruptcy Code.

12.     If any new relevant facts or relationships are discovered or arise, CLA will use reasonable efforts to identify such further developments and will file a supplemental declaration as required by Bankruptcy Rule 2014(a).

## COMPENSATION

13.     Subject to the Court's approval, and customary with its standard pre-petition fee arrangement with the Debtors, CLA has agreed to charge a fixed fee with respect to the following Services: 401(k) Audit – $9,175.00 (less the $950 in fees received by CLA prepetition); Pension Plan Audit – $9,175.00 (less the $785 in fees received by CLA prepetition); Tax Return Services – $59,800.00 (the "Fixed Fees").

14.     With respect to all other Services, CLA has agreed to charge the Debtors on an hourly basis.  CLA's standard hourly rates for the professionals providing Services to the Debtors are as follows:

| Professional | | Standard Hourly Rate |
|---|---|---|
| Ed Grossman, CPA | Principal | $400 |
| Jeff Hardin, CPA | Principal | $360 |
| Rebecca Thoune, CPA | Tax Director | $340 |
| Cathy Vicary, CPA | Director | $240 |
| Cassandra Kurek, CPA | Manager | $235 |
| Other Senior Assurance Personnel | | $220-240 |
| Staff Assurance Personnel | | $155-165 |

15.     CLA's hourly rates are set at a level designed to compensate CLA fairly for the work of its professionals.  Hourly rates vary with experience and seniority of the individuals assigned.

16.     CLA will also charge the Debtors for all reasonable and necessary expenses incurred in the course of providing the Services.  In addition, pursuant to the Engagement

4

Agreements, the Debtors have agreed to pay CLA a Technology and Support Fee (the "Support Fee") equal to five percent (5%) of CLA's fees for the Services, which CLA regularly charges its non-bankruptcy clients in the ordinary course of its business. The Support Fee is related to the data-security costs incurred by CLA to protect the Debtors' information and is a customary fee charged CLA's non-bankruptcy clients.

17.     I understand that all compensation for the Services and expenses incurred by CLA are subject to final approval by the Court upon application therefor. In the ordinary course of its business, CLA maintains time records at quarter of an hour (0.25) increments. For all Services charged on an hourly basis, it is my understanding that the Debtors have requested that CLA be permitted to maintain time records at quarter of an hour (0.25) increments rather than tenth of an hour (0.1) increments. With respect to the Fixed Fees, it is my understanding that the Debtors have requested that the Court excuse CLA from maintaining contemporaneous time records, and further, to pay the Fixed Fees without further order of Court upon the completion of such Services.

18.     CLA will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. To the extent that CLA subsequently discovers any facts bearing on this Declaration, this Declaration will be supplemented and those facts will be disclosed to the Court at the earliest opportunity.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

DATED: August 6, 2021

s/Jeffrey Hardin
Jeffrey Hardin
Principal
CliftonLarsonAllen LLP

## Schedule 1
## List of Parties in Interest

**Debtors**

U.S. Tobacco Cooperative, Inc., U.S.
Flue-Cured Tobacco Growers, Inc.
Premier Manufacturing, Inc.
Franchise Wholesale Co., L.L.C.
Big South Distribution, LLC
King Maker Marketing, Inc.

**Creditors and Parties in Interest**

ABF Freight Systems
Advanced Disposal
Aerotek Commercial Staffing
Alex Shughart
Alford James Worley, Executor of the Estate of Dennis Anderson
Altadis Usa Inc
Ameren Ue
American Waste Systems
AmeriGas
Ameristaff/Medrequest
Archie Hill
AT&T
ATMOS
Averitt Express
BankCard Center
Basik Trading
BLACK HILLS ENERGY
BVU
C. Monroe Enzor, Jr., Executor of the Estate of Crawford Monroe Enzor, Sr.
Case N' Keg
CEI - The Digital Office
Central District Alarm
Century Link
Chandler Worley
Charter Communications
Charter Communications
CHEROKEE TOBACCO COMPANY LLC
Cheyenne International LLC
City of North Las Vegas
City Of Papillion
City of Raleigh
City of Raleigh
City of Roxboro
City of Sugar Hill
Class Plaintiffs in Fisher et al. v. Flue-Cured Tobacco Cooperative Stabilization Corporation

Class Plaintiffs in Speaks et al. v. U.S. Tobacco Cooperative, Inc.
CliftonLarsonAllen LLP
CliftonLarsonAllen LLP
Cogency Global
Colorado Dept Of Revenue
Columbia Gas
Comcast Business
Commercial Pest Management Ser
Cox Business Services
Crawford Sprinkler Co
Cray Milligan
Dan Lewis and Daniel H. Lewis Farms, Inc.
Daniel Lee Nelson
Degesch America Inc
Dell Marketing LP
DHL Express-USA
Diligent Corporation
DJ Powers Co., Inc.
Dominion Energy
Douglas Company
DS SMITH PACKAGING - HOLLY SPR
Duke Energy
East West Trading Co
Eddie Brown
Edward Kacsuta
EMG Electrical LLC
Estes Express Lines
EVERYTHING TOBACCO LLC
Farmer's Tobacco Co
FedEx
Fidelity Investments Inst Ops
First Horizon
First Piedmont
Fish Window Cleaning
Four Guys Tobacco LLC
GardaWorld Security Services
Gas South, LLC
George Abbot,
Georgia Dept of Revenue
Georgia Power
GFL Enviromental
Global Laboratory Services
Global Tobacco
Golden Eagle Partnership LLC
Grand Strand Water & Sewer
Greenlight Community Broadband

2

H. Randle Wood
Harold Wright
Hughes Customat Inc
IBM Credit LLC
Idaho State Tax Commission
Interchange Express
Internal Revenue Service
Iowa Department Of Revenue
Iron Mountain
J&M Sales & Service, LLC
John A Steer
JT International U.S.A., Inc.
Kendall Hill
Kenneth Dasher
Kentucky State Treasurer
Knex Worldwide
KT&G Usa Corporation
Kyle A. Cox
L J Rogers
Liggett Vector Brands
Lincoln National
Linwood Scott, Jr. and Scott Farms, Inc.
LJ Rogers
M&L Worldwide Logistics
Main Distribution
MALCAM
Mcdermott Will & Emery
Mike Mitchell
Missouri American Water
MSD
Mundet Tennessee Inc.
National Drayage Services
National Tobacco
NC Quick Pass Customer Svc Cen
New Image Global
Nippon Express USA, Inc.
North Carolina Department of Commerce, Div. of Employment Security
North Carolina Department of Revenue
NV Energy
Ontime Express
OPPD
Optum Bank
Orville Wiggins
Oscar House, CEO and President, US Tobacco Cooperative, Inc.
Our Own Candle Company
Palmetto Packaging

Papillion Sanitation
Point Broadband
Quad
Quality Builders Inc Raleigh
R+L Carriers
Radford Transport
Radford Warehouse
Randy's Forkift & Equip Svc Co
Rebel Tobacco Inc
Red Stamp Inc
Renfro Supply Company
Republic Services Inc
Richard Renegar
Rick Johnson
RingCentral Inc
Robert C. Boyette and Boyette Farms, Inc.
Robert Half Technology
Robert Poindexter
Robin Rogers
Roy L. Cook
RR Donnelley
S&D WHOLESALE
SAIA Motor Freight Line
SDR Trucking
Serena Wholesale
Shawnee Technologies Inc
Show Cigars
Sontiq, Inc.
South Carolina Dept of Revenue
Specialty Adhesives & Coatings
Spire
Stanley Smith
State of New Jersey
Stoll Keenon Ogden PLLC
Swedish Match
SWISHER INTERNATIONAL
SWM International
Tabacalera Von-Eicken S.R.L.
Tava Inc & Trev LLC - Roxboro, NC
TCG Legacy
Teresa M. Speaks
Terminix
Tforce Freight
The GTNF Trust
ThyssenKrupp Elevator Corporat
Time Warner Cable (USTC)

TMG International Inc
TN Dept Of Revenue
Tobacco Processing Services, L
Toby Speaks
TOWN OF CULPEPER VA
Town of Fuquay-Varina
Town of Marion VA
Town of St Paul
Toyota Industries Commercial Finance, Inc.
Tram Distribution Inc
Tristar
Truist Bank, as Administrative Agent, Issuing Bank and Swingline Lender
Truist Bank, as Administrative Agent, Issuing Bank and Swingline Lender
Turner Plumbing Service Inc
Uline
United States Attorney
UPS
Vector Tobacco
Verizon
Virginia Department of Taxatio
Waste Management
Watkins Logistics, LLC
Watkins Tobacco Contractors, I
Wells Fargo Vendor Fin Serv
Whitney E. King
Wyrick Robbins Yates & Ponton
Xcaliber International Ltd LLC
Yang Ming Marine Transport Cor
Young Moore and Henderson PA
AgCarolina Farm Credit, ACA
CoBank, ACB
Fifth Third Bank, N.A.
Pinnacle Bank

**<u>Bankruptcy Administrator</u>**

Lynn Tingen
Raleigh Office
Brian Behr
Parker Rumley
Rick Hinson
Marjorie Lynch
Tanya Aycock
Lesley Cavenaugh
Karen Cook

**<u>Board Members</u>**
Oscar J. House, III
Keith H. Merrick
W. Michael Lynch
Russell G. Mancuso
Todd B. Compton
Timothy C. Lynch
Daniel J. Vacek
Danny P. Watkins, Jr.
Carlos M. Vickers
James T. Hill, Jr.
Jart Hudson
Cliff Keel
Charlie S. Batten
Tommy S. Kimbro
Lindsey T. Warren
Johnny M. Shelley

**<u>Professionals</u>**
Cozen O'Connor
Mark Felger
Simon Fraser
David R. Doyle
Christina M. Sanfelippo
Hendren Redwine & Malone PLLC
Rebecca Redwine
Ben Waller
Wyrick Robbins Yates & Ponton LLP
Lee Whitman
PJ Puryear
Benjamin Thompson
CliftonLarsonAllen
Kevin Sink
W. Sidney Aldridge
Adams & Reese
Nicholas F. Schandlbauer

**Schedule 2**
**Schedule of Relationships with Parties-in-Interest**

Charter Communication
City of North Las Vegas
City Of Papillion
City Of Raleigh
Dominion Energy
Duke Energy
Knex Worldwide
Lincoln National
Radford Transport
Stoll Keenon Ogden PLLC
Terminix
ThyssenKrupp Elevator Corporat
Time Warner Cable
Truist Bank
Waste Management
Pinnacle Bank
U.S. Tobacco Cooperative, Inc., U.S.
Flue-Cured Tobacco Growers, Inc.
Premier Manufacturing, Inc.
Franchise Wholesale Co., L.L.C.
Big South Distribution, LLC
King Maker Marketing, Inc.
Debtors' Board of Director