**SO ORDERED.**

**SIGNED this 20 day of August, 2021.**



_____
**Joseph N. Callaway
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

U.S. TOBACCO COOPERATIVE, INC. et al[1]          CASE NO. 21-1511-5-JNC
                                                 CHAPTER 11
      DEBTOR

## ORDER DENYING REQUEST FOR SPECIAL COMMITTEE FORMATION
### [11 U.S.C. § 1102(a)(2)]

The matter before the court is the motion filed July 14, 2021 (Dkt. 73; the "Motion") by the Certified Class Action claimants (the "Lewis Certified Class") from civil actions pending before the Superior Court of North Carolina, Wake County, namely *Dan Lewis and Daniel H. Lewis Farms, Inc., et al. v. Flue-Cured Tobacco Cooperative Stabilization Corporation (n/k/a United State Tobacco Cooperative, Inc.),* Case Nos. 05-CVS-188 and 05-CVS-1938 (together, the "Lewis Class Litigation"). In the Motion, the Lewis Certified Class seeks entry of an order appointing its class representatives as an official special committee in this chapter 11 case pursuant to 11 U.S.C. § 1102(a)(2). The lead debtor, U.S. Tobacco Cooperative, Inc., objected to the relief sought in its response filed July 27, 2021 (Dkt. 123). The

---

[1] The debtors in these related chapter 11 cases (collectively, the "Debtors") are U.S. Tobacco Cooperative, Inc.; U.S. Flue-Cured Tobacco Growers, Inc.; Premier Manufacturing, Inc.; Franchise Wholesale Co., L.L.C.; Big South Distribution, LLC; and King Maker Marketing, Inc. The lead debtor is the named defendant in the Lewis Class Litigation. The chapter 11 cases were procedurally consolidated by order of the court July 13, 2021 (Dkt. 13).

1

matter was noticed for hearing on August 10, 2021, in Greenville, North Carolina. Respective counsel for the parties appeared and presented arguments at that time. At the conclusion of the hearing, the court took the matter under advisement.

The Lewis Class Litigation was brought in Wake County Superior Court in 2004. The Lewis Certified Class is certified in a trial court decision ratified and affirmed by the North Carolina Supreme Court in *Fisher v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 369 N.C. 202, 794 S.E.2d 699 (2016). According to the Motion and other filings in this case, the Lewis Certified Class consists of an estimated 212,000 individual claimants holding up more than 800,000 claims against the Debtors for alleged past wrongful retention or conversion of millions of dollars. On April 23, 2021, the Honorable A. Graham Shirley, Superior Court Judge Presiding by Designation in the Lewis Class Litigation, issued an intricately detailed 189 page memorandum partial summary judgment opinion, which retained some defense offset claims by the Debtors for subsequent trial by jury. *See Memorandum and Order on the Parties' Cross-Motions for Summary Judgment* (the "Partial Judgment Order"), *Lewis v. Flue-Cured Tobacco Cooperative Stabilization Corp.*, 05 CVS 188, 05 CVS 1938 (N.C. Sup. Ct. 2021) (Dkt. 37, Ex. 1). The Partial Judgment Order places the Debtors with potential liability to the Lewis Certified Class exceeding $725,000,000. On May 21, 2021, the defendant in that action and now lead debtor here, U.S. Tobacco Cooperative, filed a notice of appeal of the Partial Judgment Order to the North Carolina Court of Appeals (the "Lewis Appeal"). An order granting relief from automatic stay to pursue and defend the Lewis Appeal has been issued by this court. *See Preliminary Order Granting in Part and Denying in Part Relief from Automatic Stay of 11 U.S.C. §362(a)* (Dkt. 179).

At the August 10, 2021 hearing on the Motion, the Bankruptcy Administrator staff attorney announced support for the Motion. He also reported that general creditors other than members of the Class had not expressed sufficient interest for that office to organize and form a committee of creditors holding general unsecured claims against the Debtors. The Lewis Certified Class has

readily acknowledged that its unusual claims and interests in this case (including an assertion of a security interest by way of a constructive trust claim reservation) are sufficiently differentiable from general claims so as to preclude service of its members on a primary or general unsecured claims committee under 11 U.S.C. § 1102(a)(1), resulting in only the Lewis Certified Class currently seeking formation of a second or specific claims class committee.[2]

Title 11 U.S.C. § 1102(a)(2) authorizes the court, upon the motion of a party in interest, to appoint an additional committee of creditors "if necessary to assure adequate representation of creditors." 11 U.S.C. § 1102(a)(2). "The primary purpose of chapter 11 committees is to maximize recovery for the creditors they represent." *In re Roman Catholic Church of the Archdiocese of New Orleans*, 2021 Bankr. Lexis 302, at *42 (Bankr. E.D. La. Feb. 8, 2021), citing *In re Nationwide Sports Distributors, Inc.*, 227 B.R. 455, 463 (Bankr. E.D. Pa. 1998). Appointment of an additional or special limited representation committee is considered "extraordinary relief" and invoked as the "the rare exception." *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009), citing *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006); *Exide Techs. v. Wis. Inv. Bd.,* 2002 U.S. Dist. LEXIS 27210, at *4 (D. Del. Dec. 23, 2002). Formation of a special class committee is a remedy "infrequently evoked" and then only in the court's discretion on a "case-by case basis based on the unique challenges presented in a particular chapter 11 case."  *In re Yahweh Ctr., Inc*. 2016 Bankr. LEXIS 3525 at *4-5, No. 16-4306-5-JNC (Bankr. EDNC Sept 28, 2016); *see also In re Enron Corp.*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002). "In deciding whether circumstances warrant, a court must first evaluate whether creditors will be adequately represented without the appointment of a committee, as provided in 11 U.S.C. § 1102(a)(2)." *Id.*

---

[2] It should be noted that the lack of formation of a general creditor committee under section 1102(a)(1) at this relatively early stage of this case is not unusual and does not preclude a committee being proposed and authorized at a later stage in the case. Counsel for the Bankruptcy Administrator reported that efforts to form a general committee would continue.

3

In deciding whether additional committee representation is appropriate, courts consider several factors including:

> 1) the ability of the committee to function; 2) the nature of the case; 3) the standing and desires of the various constituencies; 4) the ability for creditors to participate in the cases without an official committee and the potential to recover expenses pursuant to § 503(b); 5) whether different classes may be treated differently under a plan and need representation; 6) the motivation of movants; 7) the costs incurred by the appointment of additional committees; and 8) the tasks that a committee or separate committee is to perform.

*In re Winn–Dixie Stores, Inc.*, 326 B.R. 853, 858 (Bankr. M.D. Fla. 2005). In weighing these aspects, "[n]o one factor is dispositive, and the amount of due consideration given to each depends on the circumstances of the particular chapter 11 case." *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006).

As noted by the parties at the hearing, this court allowed the formation of a special class committee in *Yahweh*. However, the facts in that case greatly differ from those presented here. Unlike the relatively unsophisticated near-minimum wage claimants in *Yahweh*, the Lewis Certified Class is well organized and already very ably represented, as evidenced by it staying power in the seventeen year odyssey in the state court in the Lewis Class Litigation. The class already functions at a highly sophisticated legal level---the complete opposite of the *Yahweh* claimants, who each held relatively small claims, could not be described as sophisticated in legal proceedings, could not afford legal representation on their own, were not a Rule 23 certified class with years of participation in high stakes litigation, and were not represented at each hearing in that bankruptcy case by a number of elite trial lawyers.

Given this high level of sophistication, the Lewis Certified Class is adequately represented without the necessity of formation of a special committee under § 1102(a)(2). The tasks necessary to be performed to preserve and vigorously prosecute the positions of the Lewis Certified Class will not be affected by section 1102 committee status. Unlike in *Yahweh*, the Debtors here readily

acknowledged that the Lewis Certified Class is able to speak in one voice and with full standing, which this court has already recognized in ruling on its relief from stay motion and allowing its bankruptcy counsel to appear in the case. The Lewis Certified Class has legal standing from its Rule 23 certification in state court, is highly organized and is already functioning very effectively as an uncontested, recognized ad hoc committee or class.

Nothing in this chapter 11 case is being delayed by lack of official committee status for the Lewis Certified Class; in fact, quite the opposite is true. No delay will ensue from not establishing an official committee for it. As acknowledged by counsel for the debtor at the hearing on this matter, a seat of honor is already reserved for the Lewis Certified Class at the negotiation and litigation tables in this case. The nature of the case here revolves around the outcome of the Lewis Appeal, and the corresponding effect, if any, on the Partial Judgment Order. These parties have been grappling in litigation for seventeen years. This is not a circumstance where the Lewis Certified Class is entitled to obtain a litigation advantage in the Lewis Class Litigation by an aggressive exercise of the investigation powers granted committees by section 1103(c)(2). The litigational relationship and fact finding powers balance between the Lewis Certified Class and the Debtors is necessarily governed by applicable rules of bankruptcy, civil, and appellate procedure.

The Lewis Certified Class is more than capable of representing itself in these bankruptcy cases.[3] It is not prejudiced by denial of official committee status. Having considered all the facts and circumstances presented, the court concludes that grant of section 1102 special committee status to the Lewis Certified Class would be of limited if any value under the facts of this case. The presence or

---

[3] In fact, other growers have opted out of the Lewis Certified Class to pursue claims in parallel actions in other states and in the United States District Court for the Eastern District of North Carolina on a singular basis. *See, e.g., Speaks v. U.S. Tobacco Coop.*, 486 F.Supp.3d 974 (E.D.N.C. 2020). Another group of tobacco growers consisting of approximately 5000 current members of the cooperative constitute a further group of persons similarly situated to the Lewis Certified Class. Nothing in this order precludes the Lewis Certified Class from seeking formation of a more expansive representation committee.

absence of a cloak of section 1102(a)(2) official special committee status will not change the fair balance or leverage between those parties. The Motion is DENIED.

END OF DOCUMENT